561 P.2d 1224

STATE of Arizona, Appellee,

v.

Paul William JORDAN, Appellant.

No. 3156.

Supreme Court of Arizona,
En Banc.

Dec. 30, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Frank T. Galati, Asst. Attys. Gen., Phoenix, for appellee.

Derickson, Kemper & Henze by James Hamilton Kemper, Phoenix, for appellant.

HAYS, Justice.

This is an appeal by Paul William Jordan from a conviction after jury trial for first degree murder. Appellant was sentenced to be punished by death. We have jurisdiction pursuant to Ariz.Const. art. 2, § 24 and art. 6, § 5; A.R.S. §§ 12–120.21, 13–1711; and 17 A.R.S. Rules of Criminal Procedure, rule 31.2(b).

The appellant was charged with the murder of the proprietor of a grocery store in Tempe, Arizona, that occurred during the course of a robbery on January 15, 1974. Two investigators had received information that appellant had something to do with the robbery and proceeded to interview the appellant after informing him of that fact. Within a matter of hours, the appellant confessed to the murder.

Appellant raises three issues on appeal:

1. Was appellant's constitutional right to due process of law, guaranteed by the Fourteenth Amendment to the United States Constitution, denied by the introduction of his confession in evidence?

2. Did the trial court err in imposing the death penalty?

3. Was the appellant denied his rights under the Eighth and Fourteenth Amendments to the United States Constitution, to be free from Cruel and Unusual Punishment, when he was sentenced to death under A.R.S. § 13–454?

I

Appellant first argues that his confession was involuntary, and as such was inadmissible in evidence. His argument is couched in terms of the voluntariness of a confession when induced by promises made to a defendant by police officers.

It appears from the record that the basis of the appellant's claim concerns two separate promises made by the authorities prior to the appellant's confession. The course of events which gives rise to this contention is as follows.

On May 1, 1974, while in custody in Texas, the appellant first maintained that he had no knowledge of the Tempe incident. Shortly thereafter, however, after talking with his girlfriend, Nancy Caldwell, he told the investigators that he would make a statement to them upon certain conditions. He stated that if the charges he was then facing in Texas were dropped and if the charges pending against Nancy Caldwell were dropped and she was released, he would then give a statement. The officers indicated that they had no authority to accomplish the results he sought, but they did offer to contact the Texas prosecutor in charge of the case concerning the dropping of charges. The investigators thereupon called the county district attorney, a Mr. Tandy, and arranged a meeting for later that day.

While waiting for Mr. Tandy to appear at the Weatherford Police Department, a conversation ensued between the Tempe police officers and Jordan in which Jordan asked the investigators whether Arizona had the death penalty. One of the officers replied to the effect that they could not remember the last time anyone received the death penalty in Arizona. They later ventured an opinion during the course of the conversation, that the appellant probably would get a prison sentence rather than the death penalty. However, he was also told at that time that this was only the officer's opinion and that ultimately his sentence was up to the judge and jury. Jordan admitted at the voluntariness hearing that a specific guarantee was never made to the effect that the most he would receive would be life.

A short while later, the prosecutor, Tandy, arrived and he and the appellant and Nancy Caldwell met in private. At the conclusion of the meeting, the appellant was willing to make a statement. He was again advised of his *Miranda* rights and he

thereupon confessed to the crime for which he was here charged. At the meeting the prosecutor, Tandy, had agreed to drop the Texas charges against both Ms. Caldwell and Jordan and to release Nancy Caldwell if the appellant made his statement to the Arizona authorities.

The trial court held a hearing on the voluntariness of the confession and found it to be voluntary. A jury trial was thereafter held and the confession, and testimony concerning the circumstances surrounding the giving of the confession, were offered in evidence.

■ The appellant contends that his confession was the result of the promise that his and Nancy Caldwell's charges in Texas would be dropped. Although it was not raised in the appellant's brief, it is certainly incumbent on us to consider in addition, pursuant to A.R.S. § 13–1715(B) and *State v. James*, 110 Ariz. 334, 519 P.2d 33 (1974), whether the confession was the product of what may be construed as a promise of leniency, referring to the officer's statement that he would probably get life and not the death penalty.

■ The admissibility of a confession is proper only when it was freely and voluntarily given and was not the product of either physical or psychological coercion. *State v. Edwards*, 111 Ariz. 357, 529 P.2d 1174 (1974).

"While '[n]o single litmus-paper test for constitutionally impermissible interrogation has been evolved', the test remains the test of voluntariness. *Culombe v. Conn.*, 367 U.S. [568,] at 601, 81 S.Ct. [1860,] at 1878 [6 L.Ed.2d 1037]. If the confession is the result of a free choice of the individual, then it may be used as evidence against him, but if his will has been overborne and his capacity for decision diminished, then the use of his confession is violative of the principles of due process." 111 Ariz. at 361, 529 P.2d at 1178.

We find that the appellant here did make his confession freely and voluntarily and without coercion or under duress.

Addressing ourselves first to the promise by the prosecutor, Tandy, that Jordan's and Nancy Caldwell's charges would be dropped and that Caldwell would be released if he gave a statement, we note that it was the appellant himself who initiated the "bargaining." When first questioned, the appellant knew nothing. After talking with Caldwell, however, the appellant told the officers that he would give a statement if certain conditions were met. The officers cooperated in his desires but never made any offers to induce or coerce the appellant to talk.

We find the case of *Taylor v. Commonwealth*, Ky., 461 S.W.2d 920 (1970), to be instructive on this particular matter. In *Taylor*, the facts were very similar to those herein. The two defendants, charged with crimes in both Indiana and Kentucky, offered to make confessions of the Kentucky crimes if the charges against them in Indiana would be dismissed. The authorities agreed and the defendants signed their confessions. At trial they argued that their confessions, having been induced by a promise, were involuntary. The court disagreed, however, finding that, because the proposal for the "deal" came from the defendant, the promise did not interfere with the appellants' exercise of a free volition in giving the confession. The court then justified their conclusion.

"In *Miranda v. Arizona*, 384 U.S. 436, the Supreme Court said (at page 478, 86 S.Ct. 1602, at page 1630, 16 L.Ed.2d 694):

" ' . . . Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . . '

"We think it is obvious that the 'compelling influences' referred to are ones exerted by the *public authorities* in such a way as would be calculated to affect the accused's exercise of a free and voluntary choice of whether or not to confess. Here the promise was *solicited* by the accused, freely and voluntarily, so they cannot be heard to say that in accepting the promise they were the *victims* of compelling influences." 461 S.W.2d at

922. *Accord, Hunter v. Swenson*, 372 F.Supp. 287 (W.D.Mo.1974), *aff'd*, 504 F.2d 1104 (8th Cir. 1974).

■ We agree with the analysis and holding of *Taylor*. Since the appellant himself initiated the "deal" here involved by offering to confess if the Texas charges were dropped, we cannot see how the appellant could have been induced to confess by the authorities' agreement to his terms.

"The record reveals all the manifest indicia of comprehension of his rights, waiver thereof, and a continuing desire to make a statement. We do not have to plumb the depths of the defendant's mind to determine ab initio the issue of voluntariness. The police, as reasonable men, may rely on consistent objective manifestations of consent and waiver by a suspect." *State v. Sample*, 107 Ariz. 407, 408, 489 P.2d 44, 45 (1971).

We find that the promise not to prosecute in Texas, having been solicited by the appellant, did not render his confession involuntary.

A second "promise" arguably was made by the police during the questioning prior to the confession when one of the officers ventured the opinion that the appellant would probably get a life sentence in Arizona rather than the death penalty. Although the appellant admitted at the voluntariness hearing that no specific guarantees were made, he did insist in his testimony at trial that "he was under the impression" that he was promised, in so many words, that he would get a life sentence and therefore be eligible for parole in seven to seven and one-half years. He also claimed that his alleged "promise" was one of the reasons that he confessed.

■ The trial court's determination of the admissibility of a confession will not be upset on appeal absent "clear and manifest" error. *State v. Edwards, supra*. The court below found the confession to be freely and voluntarily given and therefore admissible.

The statement concerning the sentence he might receive was couched in terms of a mere possibility. Although the record is unclear, it appears that it was made in response to the appellant's questioning the officers about possible sentences he would receive in Arizona. Moreover, the officer specifically told the appellant that this was merely an opinion and that the matter was ultimately up to the judge and jury.

More importantly, the statement was made during a conversation between the appellant and the investigators while they were waiting for the prosecutor, Mr. Tandy, to arrive. It was prior to that time that the appellant had freely decided that if he could get his and his girlfriend's charges in Texas dropped and get her released that he would make his confession. The decision and offer had already been made by Jordan. "If the person making the confession claims to have been coerced, the fundamental issue is his state of mind. *Miranda v. Arizona, supra*." *State v. Edwards, supra*, 111 Ariz. at 361, 529 P.2d at 1178. At this particular point in time, when the appellant had offered to confess if his demands were met, and the parties were merely waiting to obtain the Texas authorities' approval, the appellant's state of mind was such that his confession was imminent provided the Texas prosecutor agreed.

■ We find that the officers' statements did not constitute a promise of leniency and that, in the alternative, even were it perceived as such by the appellant to be such a promise of leniency, it was not one relied upon by the appellant in his decision to confess. Based on this finding and on our prior finding concerning the promise to drop charges in Texas, and on a review of the entire record, we hold that the trial court's determination that appellant's confession was freely and voluntarily given and without coercion, was correct.

We further hold, based on our review of the entire record, that the verdict is clearly supported by the evidence.

II

Appellant next questions both the propriety of the imposition of the death penalty under A.R.S. § 13–454 and the constitutionality of the statute itself. We will first

consider his argument concerning the imposition of the death penalty under the procedures outlined in § 13–454. A hearing on aggravation and mitigation was held under A.R.S. § 13–454. The appellee submitted allegations of four prior convictions of appellant for felonies committed in the state of Texas. On cross-examination the appellant admitted to the prior convictions in open court and records thereof were attached as addenda to the original indictment in this matter. Appellant presented no evidence in mitigation at the hearing. The trial court found that as to aggravation there were one or more aggravating circumstances under subsection E of A.R.S. § 13–454, and no mitigating circumstances sufficiently substantial to call for leniency under subsection F of A.R.S. § 13–454. The court therefore ordered that appellant be sentenced to death.

■ Appellant argues that the four prior Texas convictions do not constitute aggravating circumstances within the provisions of A.R.S. § 13–454(E)(1) and (2). He first argues that none of the four crimes is punishable by a sentence of life imprisonment or death under Arizona law. The theoretical basis for his argument rests upon the premise that A.R.S. § 13–643 makes it impossible to impose a life sentence on a defendant in Arizona for robbery. Appellant was convicted of three separate robberies in Texas. A.R.S. § 13–643 specifies a minimum punishment without specifying a maximum punishment, with one exception. A.R.S. § 13–1644 states that a maximum punishment of life imprisonment is authorized where no limit to the duration of punishment is declared. A.R.S. § 13–643 does not prohibit the imposition of a maximum life sentence. The indeterminate sentence procedures were created by the legislature to make the punishment "fit the offender rather than the crime, . . . " *Ard v. State*, 102 Ariz. 221, 427 P.2d 913 (1967). The parole board is thus given the function of determining the actual time to be served within the framework of the sentence. *See State v.*

*Hays*, 109 Ariz. 123, 506 P.2d 254 (1973). We construe A.R.S. § 13–454(E)(1) to apply to a conviction for which, under Arizona law, a maximum sentence of life imprisonment may be imposed.

Appellant next argues that the record does not support the finding under A.R.S. § 13–454(E)(2) that he was convicted of a felony in the United States, involving the use or threat of violence on another person. The trial court, in its findings, concluded that appellant was previously convicted of felonies in the United States involving the use or threat of violence on another person. The record clearly supports such a finding by the trial court that appellant had been convicted of three felonies in Texas involving the use or threat of violence on another person. The crime of robbery as defined under Texas law involves either actual bodily injury to the victim, or the placing of another in fear of imminent bodily injury or death. Section 29.02, Vernon's Texas Codes Annotated. The verdict of guilt must therefore have necessarily included a specific finding that the appellant used or threatened violence on another and, accordingly, we hold that appellant was properly sentenced to death under A.R.S. § 13–454.

### III

The appellant's final contention is that he was denied his rights under the Eighth and Fourteenth Amendments' proscription of cruel and unusual punishment relying on *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In *Furman*, the constitutional defect of the Georgia death penalty statutes was found to be that it allowed the jury to impose the death penalty in an arbitrary and capricious manner. The appellant argues that the Arizona death penalty statute, A.R.S. § 13–454, is similarly unconstitutional in that it allows a judge to arbitrarily impose the sentence of death. We cannot agree.

This court, in *State v. Richmond*, Ariz., 560 P.2d 41 (filed December 20, 1976), has upheld the constitutionality of the Arizona death penalty statutes in light of the most

recent United States Supreme Court pronouncements of *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and its companion cases. The court in *Richmond* addressed the issue now before us and found that Arizona's statutory system for imposing the death sentence, based on aggravating and mitigating circumstances, insures that the trial judge is given "adequate information and guidance" that would meet the concerns expressed in *Furman*. Since the judge's discretion in sentencing is confined to narrow limits and because he is given purposeful direction and assistance under the statute, there is very little likelihood that the death penalty will be imposed freakishly or arbitrarily. Moreover, in Arizona, as was the case in Georgia (*see Gregg v. Georgia, supra*), "the further safeguard of meaningful appellate review is available to ensure that death sentences are not imposed capriciously or in a freakish manner." *Gregg v. Georgia, supra*, 428 U.S. at 195, 96 S.Ct. at 2935, 49 L.Ed.2d at 887.

The fact that the judge instead of the jury imposes the sentence is without consequence. We addressed this issue in *Richmond* and found it to be without merit relying on *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

Based on the foregoing, we hold that Arizona's death penalty statute, A.R.S. § 13–454, does not allow the death sentence to be imposed in an arbitrary and capricious manner and is therefore constitutionally firm.

Judgment of conviction and sentence are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.