588 P.2d 852

**The STATE of Arizona, Appellee,**

v.

**Mario Fernandez TORRES, Appellant.**

**No. 2 CA-CR 1476.**

Court of Appeals of Arizona, Division 2.

Nov. 15, 1978.

Rehearing Denied Dec. 13, 1978.

Review Denied Jan. 3, 1979.

John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III, and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

John R. Wildermuth, Coolidge, for appellant.

## OPINION

HOWARD, Judge.

Appellant was found guilty by a jury of transportation of marijuana. The trial judge placed him on probation for three years and incarcerated him in the county jail for ninety days as a condition of probation. He contends on appeal that the trial court erred in denying his motion to suppress and in allowing into evidence his statements to law enforcement officers. We do not agree.

The record shows that appellant's vehicle was stopped by Officer Lopez for a speeding violation. Appellant got out of his vehicle and, upon request, gave Officer Lopez his driver's license. When asked to produce the vehicle registration, appellant entered the vehicle on the driver's side to get the registration out of the glove compartment. Officer Lopez went to the front door on the passenger side, which was locked, and asked appellant to open it. When appellant did, Lopez smelled the odor of marijuana coming from the vehicle. The officer then had appellant open the trunk, in which he found fourteen bricks of marijuana. Appellant was advised of his *"Miranda"* rights. He was told that he had the right to remain silent, that anything he said could and would be used against him, that he had a right to have an attorney present and that if he could not afford an attorney, one

would be appointed for him. Lopez then asked him if he wanted to talk to anybody and appellant said either "No, I don't want to talk to anybody", or, "No, I don't want to see anybody."

After they got into the patrol car and headed for the police station, Lopez, who was unsure whether appellant meant he did not want to talk to an attorney or did not want to talk to the police, said, "We have undercover agents that you can talk to if you want." At that time appellant made no response. After they had traveled four or five miles without conversation, appellant asked Lopez what an undercover agent could do for him. Lopez told him that he did not know, that he could fix it up so he could see an agent and that it would probably be in his favor if he did so. Appellant agreed to talk to an agent.

After they arrived at the police station Lopez asked appellant where he got the marijuana. Appellant told him where he had picked it up and where he was supposed to make contact with the buyers. Lopez gave this information to an undercover agent who was summoned to the station. The agent asked appellant if his rights had been read to him and if he understood them. Appellant answered affirmatively. The agent then talked with appellant about where the load was going. He told appellant that if they were able to make an arrest of the buyers he would talk to the county attorney in his behalf. However, the agent made no promises to appellant. The load was taken to its destination but the buyers never showed up.

■ Appellant claims an illegal search occurred when Officer Lopez asked him to open the passenger door. He argues that this constituted an unlawful intrusion because the officer lacked probable cause to believe the vehicle contained contraband or that appellant had committed a crime other than a minor traffic violation. Officer Lopez stated that because many times a violator can have a knife or handgun under the seat of the car, the department's unwritten safety policy is to follow a violator and keep him in view at all times. He said

he asked appellant to open the passenger door for his protection. We believe that opening the car door served a legitimate purpose in assuring the officer's safety. Since he had a right to make the request, his smelling the marijuana did not constitute a search.

Appellant contends his statements were inadmissible because (1) he was not told he had a right to the presence of an attorney during interrogation, (2) they were improperly induced by implied promises and (3) his invocation of his right to remain silent was not honored.

In *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) the Court states:

"Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation . . ." 86 S.Ct. 1626.

Federal and state courts have had occasion to rule on the adequacy of that part of the *"Miranda"* warning dealing with the right to counsel. Some federal courts have held that merely telling the accused that he has a right to an attorney does not suffice. *United States v. Rizzo,* 418 F.2d 71 (7th Cir. 1969), cert. den., 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260; *Lathers v. United States,* 396 F.2d 524 (5th Cir. 1968). Informing the accused that he has a right to speak or consult with a lawyer has also been held to be insufficient. *Chambers v. United States,* 391 F.2d 455 (5th Cir. 1968). In *Sanchez v. Beto,* 467 F.2d 513 (5th Cir. 1972), cert. den. 411 U.S. 921, 93 S.Ct. 1548, 36 L.Ed.2d 314, the court held that warning the accused that he had a right to have an attorney appointed was defective. Telling the accused he has a right to consult with an attorney "anytime" has been also held to be defective. *Atwell v. United States,* 398 F.2d 507 (5th Cir. 1968). In *Windsor v. United States,* 389 F.2d 530 (5th Cir. 1968), the court held that *Miranda* was not complied with by telling the accused that he ". . . could speak with an attorney or anyone else before he said anything at all."

Since he was not told he had a right to have an attorney present during interrogation, the warning was held to be deficient.

State courts have also held that merely telling the accused that he has a right to an attorney does not comply with the constitutional requirements of *Miranda*. E. g., *State v. Creach*, 77 Wash.2d 194, 461 P.2d 329 (1969); *Duckett v. State*, 3 Md.App. 563, 240 A.2d 332 (1968). The rationale behind these cases is best expressed in *Lathers v. United States*, supra, at p. 535, where the court states:

"The *Miranda* warning must effectively convey to the accused that he is entitled to a government-furnished counsel here and now. *If the words are subject to the construction that such counsel will be available only in the future, Miranda has not been obeyed.* Although there is no talismanic or heraldic abracadabra which must be fulfilled, the offer of counsel must be clarion and firm, not one of mere impressionism. The words must asseverate with conviction that any accused can have a lawyer before speaking. Otherwise, the warning is delusory and the *Miranda* safeguards are illusory." (Emphasis added)

Other courts have held that even though the warning did not specifically tell the accused that he had a right to have a lawyer present during questioning, such an inference could be drawn from the circumstances of the warning and there was compliance with *Miranda*. In *United States v. Cusumano*, 429 F.2d 378 (2nd Cir. 1970), cert. den. 400 U.S. 907, 91 S.Ct. 61, 27 L.Ed.2d 61, the accused was warned of his right to remain silent, his right to an attorney, the fact that any statements he made could be used in a court of law, and was told that he had a right to legal counsel and if he didn't have counsel, an attorney would be appointed for him. And see, *Sweeney v. United States*, 408 F.2d 121 (9th Cir. 1969). The State of Georgia has flatly refused to follow *Windsor v. United States*, supra, in the case of *Eubanks v. State*, 240 Ga. 166, 240 S.E.2d 54 (1977), stating at p. 55:

"Justice does not demand that every oversight by an officer in making the *Miranda* statement must result in a reversal. Here, the suspect was advised he did not have to say anything to the officers; if he did, what he told them could and would be used against him in a court of law; that he had a right to any attorney; and if he couldn't afford an attorney, one would be provided. It is implicit in this instruction that if the suspect desired an attorney the interrogation would cease until an attorney was present. . . ."

Closer to the facts here are the cases of *Lavallis v. Estelle*, 370 F.Supp. 238 (S.D. Tex.1974) and *People v. Prim*, 53 Ill.2d 62, 289 N.E.2d 601 (1972), cert. den. 412 U.S. 918. In *Lavallis* the accused was told he could have an attorney "present at the time". This was held to be adequate. In *Prim* the accused was advised that he had a constitutional right to have an attorney present and that if he could not afford an attorney they would get one for him. This was also held to comply with *Miranda*. Our facts are close to those in *Prim*. Appellant was told that he had a right to have an attorney present and that if he could not afford an attorney one would be appointed for him. We believe this sufficiently conveyed to appellant that he had a right to government-furnished counsel then and there and that the mandate of *Miranda* was met.

■ *Miranda* states that once the warnings have been given, if an individual indicates in any manner prior to or during questioning that he wishes to remain silent, the interrogation must cease. After appellant had stated that he did not wish to speak to anyone, Officer Lopez' explanation that they had undercover agents with whom he could speak did not constitute an "interrogation" in violation of *Miranda*.

■ A confession is admissible only when it was freely and voluntarily given and was not the product of either physical or psychological coercion. *State v. Jordan*, 114 Ariz. 452, 561 P.2d 1224 (1976). A confession, to be free and voluntary within the Fifth

Amendment to the United States Constitution, must not have been obtained by any direct or implied promises, however slight. *State v. McFall*, 103 Ariz. 234, 439 P.2d 805 (1968). However, where the promises are solicited by an accused through his desire to make a "deal" such promises do not interfere with the accused's exercise of free volition in giving a confession. *State v. Jordan*, supra.

Officer Lopez testified at trial as follows:

"Q. Do you remember who it was that spoke first after you got in the car and started towards the DPS?

A. I believe it was me. I asked him _ _ _ I said something like, 'Do you realize what's happening, Mario?' And he said—

Q. His response was what?

A. He didn't respond. He just kept looking straight ahead. And I said, 'Would you like to talk to an agent, undercover policeman?' And he still didn't respond.

So I thought he wasn't going to answer me. So I kept on driving, and a ways down the road he said, 'How can an agent help me?' or 'What can an agent do for me?' or something like that.

Q. And what did you tell him in response?

A. I said, 'I don't know. I will call him and he can tell you what he is going to do.' I said, 'I guess it all depends on what you guys work out,' or something to that effect. I am not sure what the correct wording was.

Q. You gave him the impression that he could work something out with the agent?

A. No.

Q. That is what you just said, is it not? 'It all depends on what you guys can work out'?

A. I don't know if I told him that, but I let him know that if he talked to an agent it probably would be in his favor. I never make any deals with anybody. I ask them if they want to see anybody.

Q. But you did imply to him that it would be to his benefit to talk to an agent?

A. Yes. Yes, I would say so.

\* \* \* \* \* \*

Q. Okay. After you asked him. if he wanted to talk to an agent and he said 'What can an agent do for me,' etc., do you remember anything else being said?

A. He said something about 'Man, I just want to make enough to pay the rent.' He says, 'I was getting paid $200.'

\* \* \* \* \* \*

Q. This was all after you told him that it might be or could be or would be to his benefit to talk to an agent?

A. Yes. I never said it would be to his benefit. I asked if he wanted to talk to an agent.

Q. Depending upon what he and the agent worked out?

A. Yes."

█ As can be seen from the above it was appellant who made the initial suggestion for a "deal". At least that is the way Officer Lopez took his question, "What can an agent do for me?" Apparently the trial court was of the same opinion. The trial court's determination of a confession's admissibility will not be upset on appeal absent clear and manifest error. *State v. Jordan*, supra. The court below found the confession to be freely and voluntarily given and therefore admissible and we cannot say this was error. Appellant's statements were not the product of physical or psychological coercion but were the result of his desire to make a "deal".

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.