614 P.2d 825

**STATE of Arizona, Appellee,**

v.

**Paul William JORDAN, Appellant.**

**No. 3156–2.**

Supreme Court of Arizona,
In Banc.

June 19, 1980.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Division, Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, John Foreman, Deputy Public Defender, Michael G. Sullivan, Deputy Public Defender, Phoenix, for appellant.

GORDON, Justice:

Defendant Paul William Jordan appeals from a sentence of death after an aggravation/mitigation hearing pursuant to former A.R.S. § 13–454.[1] Defendant had previously been convicted of first-degree murder and sentenced to death, and this Court affirmed the judgment and sentence. *State v. Jordan*, 114 Ariz. 452, 561 P.2d 1224 (1976). Subsequent to our decision, the Supreme Court of the United States, in light of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), vacated Jordan's death sentence and remanded to this Court. *Jordan v. Arizona*, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978). On September 7, 1978, pursuant to *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), we remanded to the trial court for resentencing. Defendant was again sentenced to death on December 20, 1978, after a hearing following the dictates of *Lockett, supra*, and *Watson, supra*.

It is from this last sentence that defendant appeals. Taking jurisdiction pursuant to A.R.S. § 13–4031, we affirm the sentence.

Defendant presents four basic claims on appeal:

(1) Arizona's death penalty statute is unconstitutional on its face.

(2) *State v. Watson* improperly permitted defendant to be resentenced to death after his first sentence was vacated.

(3) Defendant may not be sentenced to death, because his first degree murder conviction is based on a felony-murder theory.

(4) The death penalty statute was incorrectly applied to defendant.

## CONSTITUTIONALITY OF THE DEATH PENALTY STATUTE

Defendant first claims that a sentence of death is *per se* cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. We have previously found this claim to be without merit. *See State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1976).

Defendant next contends that Arizona's death penalty statute violates due process of law because it offers no guidelines as to what mitigating circumstances may be considered and how they are to be weighed against the statutory aggravating circumstances. We have rejected this contention in *State v. Mata*, 125 Ariz. 233, 609 P.2d 48 (1980).

Defendant's last argument under this issue is that the Arizona death penalty statute is unconstitutional because it requires a defendant to prove the existence of mitigating circumstances and because it does not require the state to prove aggravating circumstances beyond a reasonable doubt. As to defendant's burden of proving mitigating circumstances, we have considered this issue and decided it adversely to defendant in *State v. Watson, supra*.

---

1. Presently A.R.S. § 13–703.

■ We have not previously considered the second prong of defendant's argument, that the death penalty statute is unconstitutional because it does not require the state to prove the existence of aggravating factors beyond a reasonable doubt. A.R.S. § 13–454 B provides that "[t]he burden of establishing the existence of any of the [aggravating] circumstances * * * is on the prosecution." The statute does not indicate the degree of certainty with which these circumstances must be established, but we have always assumed, and we so hold now, that the state must prove the existence of aggravating circumstances beyond a reasonable doubt. Our past cases, moreover, demonstrate that this Court will reduce a death penalty to life imprisonment where the evidence of aggravating factors is inconclusive. *See, e. g., State v. Madsen,* 125 Ariz. 346, 609 P.2d 1046 (1980); *State v. Verdugo,* 112 Ariz. 288, 541 P.2d 388 (1975).

## CHALLENGES TO STATE v. WATSON

Defendant sets forth a variety of arguments that this Court's decision in *State v. Watson, supra,* improperly allowed defendant to be resentenced after his first sentence was vacated. He asserts that *Watson* incorrectly decided that the unconstitutional parts of Arizona's death penalty procedure were severable from the remainder and that a *Watson* rehearing violates the double jeopardy and ex-post facto prohibitions of the Constitution. All of these contentions have been adequately considered in *Watson* and its accompanying supplement and we need only repeat our conclusion in *Watson,* that these claims are not meritorious.

■ Defendant also claims that our decision in *Watson* violates the general due process requirements of fundamental fairness. This argument appears to be no more than a restatement of his already rejected ex-post facto and double jeopardy arguments couched in broad terms of fairness. The crux of defendant's argument is that our decision in *Watson* was unfair because it had the effect of "changing the rules in the middle of the game," permitting the

state to have a second chance to procure a death sentence. We do not find that *Watson* had an unfair effect on defendant. The "change in rules" was for defendant's benefit, allowing him to introduce any mitigating factors at the aggravation/mitigation hearing.

Defendant finally attacks the *Watson* decision as a judicially created penalty, unauthorized by law, and in violation of the Eighth and Fourteenth Amendments. This argument was rejected in *State v. Mata, supra.*

## DEATH SENTENCE FOR FELONY–MURDER

Defendant has argued that the United States Supreme Court's decision in *Lockett v. Ohio, supra,* prohibits the death penalty where the defendant is convicted under a felony-murder theory. In *State v. Arnett,* 125 Ariz. 201, 608 P.2d 778 (1980) we said that *Lockett* did not prohibit the death sentence in a felony-murder case where the defendant intentionally shot the victim. *See also State v. Steelman,* 126 Ariz. 19, 612 P.2d 475 (1980).

## PROPRIETY OF IMPOSING THE DEATH PENALTY ON DEFENDANT

■ At defendant's original sentencing hearing, the trial court found two aggravating circumstances based on defendant's four prior Texas convictions, and no mitigating circumstances. *See State v. Jordan,* 114 Ariz. 452, 561 P.2d 1224 (1976). The aggravating circumstances are found under A.R.S. § 13–454 E which provides:

"1. The defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable.

"2. The defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person."

At defendant's second sentencing hearing, the trial court found the same two

aggravating circumstances and two additional aggravating circumstances listed under A.R.S. § 13–454 E(5) and (6).[2] The trial court again determined that no mitigating circumstances existed.

Initially defendant contends that the trial court was precluded from finding additional aggravating circumstances at his second sentencing hearing which were not found at his first hearing. Because we agree with the trial court's determination as to the existence of the first two aggravating circumstances and as to the absence of any mitigating circumstances, we find it unnecessary to consider the additional aggravating circumstances found at the second hearing, and we need not decide the merits of defendant's contention.

Defendant next asserts that the trial court misapplied A.R.S. § 13–454 E(1) and (2) in concluding that his Texas convictions were aggravating circumstances under the statute. Defendant argues that § 13–454 E(1) and (2) contemplate other convictions which occurred prior to the murder and, since his Texas convictions were entered after the murder, they are not aggravating circumstances.

We have recently held that A.R.S. § 13–454 E(1) and (2) is not a recidivist statute and that a conviction for another offense may be an aggravating circumstance even if both the offense and conviction occur after the murder which is being punished. *State v. Steelman, supra.* It follows that defendant's Texas convictions, which occurred after the murder, may be considered as aggravating circumstances at a sentencing hearing held subsequent to those convictions.

Defendant cites *State v. Lopez*, 120 Ariz. 607, 587 P.2d 1184 (1978), as holding that a conviction for another offense must occur prior to the commission of the murder in order to be treated as an aggravating circumstance. We do not believe that our holdings in *Lopez* and *Steelman* are inconsistent. In *Lopez* the issue was the time that a conviction is deemed to occur under former A.R.S. § 13–1649 A which provided:

"A person who, having been previously convicted for petty theft, receiving stolen property, shoplifting, contributing to the delinquency of a minor, an offense involving lewd or lascivious conduct, or for any offense punishable by imprisonment in the state prison, commits any crime after such conviction, shall be punished upon conviction of such subsequent offense as follows: * * *."

We held that a conviction occurs at the time judgment of conviction is entered. The issue in the instant case is not when a conviction is deemed to occur, but whether that occurrence must precede the commission of the murder. The statute in *Lopez* by its terms contemplated convictions which were entered prior to the commission of the offense being punished. A.R.S. § 13–454 E(1) and (2) is not limited to such prior offenses. *State v. Steelman, supra.* We, therefore, hold that A.R.S. § 13–454 E(1) and (2) was not misapplied to defendant's Texas convictions.

Defendant also claims that his four prior convictions are not final because they are all being collaterally attacked by means of petitions for federal writs of habeas corpus. We have said that a prior conviction is a verity until set aside, and it may be used to enhance a sentence even though an appeal is pending. *State v. Court of Appeals, Division I,* 103 Ariz. 315, 441 P.2d 544 (1968). *See also People v. District Court In & For the Twentieth Judicial District,* 191 Colo. 558, 554 P.2d 1105 (1976). Although we recognize that an invalid prior conviction may not be used to form the basis of an aggravating circumstance for purposes of applying the death penalty, *See State v. Steelman, supra; State v. Watson, supra; State v. Lee,* 114 Ariz. 101, 559 P.2d 657

---

**2.** These aggravating circumstances are as follows:

"5. The defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value.

"6. The defendant committed the offense in an especially heinous, cruel, or depraved manner."

(1976), defendant has not attacked the validity of his prior convictions in this case by presenting specific claims of constitutional error. We thus conclude that the trial court correctly considered defendant's Texas convictions as aggravating circumstances.

■ Obviously, because this is a death penalty case, defendant's sentence should not be executed as long as none of the pending collateral proceedings have been finally decided adversely to defendant.[3] If this situation still exists at the time defendant has exhausted all avenues of relief from his conviction and sentence in the case at bar, he may then seek a stay of execution based on the lack of finality of his prior convictions.

Defendant next contends that the trial court incorrectly found that there were no mitigating circumstances. Citing *Lockett v. Ohio, supra,* defendant asserts that a lack of specific intent to cause death must be considered as a mitigating circumstance, and he claims that there was no evidence of his specific intent to kill the victim. We do not believe that the evidence demonstrated defendant's lack of specific intent to cause death.

■ Traditionally, the term "intent" has encompassed more than a desire or purpose to achieve a specific result. Generally, when a defendant acts with the knowledge that his behavior is substantially likely to cause a result he is considered to intend that result. *See* LaFave & Scott, Criminal Law, § 28 at 196–197 (1972). The following portion of defendant's confession, introduced at trial, shows his specific intent to cause death:

"Q. [By a police officer] Could you tell me what your approach was when you went into the store?

"A. [By defendant] I went in and ordered a pack of cigarettes.

"Q. Then what happened?

"A. And when I went to pay in there I seen he [sic] quite a bit of money in the register.

"Q. [sic] And I went and drew my pistol and drew down on him, walked behind the counter, register and he went for his pocket, and there was a bulge in his pocket and I thought he has a pistol. I shot him.

"Q. Did you shot [sic] him right there behind the counter?

"A. Behind the counter.

"Q. Where do you think you shot him?

"A. In the stomach."

■ It is clear from the above statements that defendant intended to shoot the victim, and it is reasonable to conclude, in the absence of any evidence to the contrary, that one who intentionally shoots another in a vital part of the body either had the purpose of causing death or had the substantial knowledge that death would result. *Cf. State v. Brierly,* 109 Ariz. 310, 509 P.2d 203 (1973). Defendant, who had the burden of proving mitigating circumstances under A.R.S. § 13–454 B, offered no evidence to contradict the natural inference from his act. Defendant points out that there was no evidence that he knew the victim or that he intended to kill at the time he entered the store. This, however, merely shows a lack of premeditation rather than absence of specific intent to kill.

■ Defendant argues that "[t]he jury was given a felony-murder instruction and so there is no jury verdict that would support a finding of specific intent." Defendant correctly notes that the felony-murder doctrine does not require a specific intent to kill to support a first degree murder conviction. *See State v. Ferrari,* 112 Ariz. 324, 541 P.2d 921 (1975). *Lockett, supra,* was not concerned, however, with the findings of the trier of fact during the guilt determination process of trial. *Lock-*

---

**3.** We note that if even one prior conviction is finally held to be valid in the pending collateral proceedings, defendant's death sentence must stand in the absence of any mitigating circumstances. A.R.S. § 13–454 D. We also note that the denial of one of defendant's habeas corpus petitions has been affirmed by the Court of Appeals for the Fifth Circuit. *Jordan v. State of Texas,* 592 F.2d 1188 (5th Cir. 1979).

*ett* merely mandates that the trial judge, at the sentencing stage, not be precluded from considering defendant's lack of specific intent as a mitigating circumstance. We do not believe that defendant proved his lack of specific intent to cause death, and the trial court did not err in finding that this mitigating circumstance was not present.

Defendant next contends that the trial court erroneously failed to consider his cooperation with state authorities as a mitigating circumstance. This cooperation consisted of a confession to police and a waiver of a hearing on his extradition from Texas to Arizona. We agree with the trial court's finding that defendant's cooperation did not amount to a mitigating circumstance.

At his sentencing hearing, defendant introduced a Tempe Police Department report which included his confession and the circumstances surrounding it. According to the report, Arizona police first became aware of defendant as a suspect in the murder when Texas authorities telephoned them and told them that a confidential informant in Texas had implicated defendant and another man in the robbery murder. Arizona police went to Texas and interviewed defendant, who at first denied any knowledge of the crime.

Later defendant attempted to bargain with authorities for his confession. Initially he demanded that various pending Texas robbery charges be dropped in return for his confession. He finally agreed to make a statement after he was told that certain charges against his girlfriend, Nancy Willifred [4] would be dropped. It is clear that defendant's confession was not motivated by a desire to help police. Rather, defendant attempted to use his confession as a bargaining chip with authorities. Indeed, we have previously upheld the voluntariness of defendant's confession because it was defendant who initiated the bargaining with police. *See State v. Jordan*, 114 Ariz. 452, 561 P.2d 1224 (1976). We do not believe that the circumstances of defendant's

confession demonstrate a degree of cooperation with police which "mitigate[s] against imposing capital punishment." *Gregg v. Georgia*, 428 U.S. 153, 197, 96 S.Ct. 2909, 2936, 49 L.Ed.2d 859, 888 (1976).

We find nothing in the bare fact that defendant waived an extradition hearing to create a mitigating circumstance. Defendant has produced no evidence of his motivation, nor has he even alleged that extradition would not have occurred without his waiver. The extent of defendant's cooperation with State authorities was not a mitigating circumstance.

Finally, defendant claims that the trial court incorrectly found that his consumption of drugs and alcohol was not a mitigating factor. The only evidence of defendant's intoxication was the testimony of Nancy Willifred at the aggravation/mitigation hearing.

Willifred testified that she and defendant traveled together from Texas to the Phoenix area. Willifred described defendant's daily drinking and pill taking during the time period leading up to and including the day of the crime.

Willifred stated that defendant drank "quite a bit" of wine, at least two bottles daily, and took varying amounts of pills, both "downers" and "speed." She testified that defendant would first start drinking and taking drugs after lunchtime, and by evening he would be "drunk and goofy." Willifred also said that during the time they were in the Phoenix area, defendant drank more wine than usual, and she and defendant together consumed about eight or nine bottles daily.

When Willifred was asked about defendant's intoxication at the time of the crime, her answers were less precise. She said that she was not with defendant at the time of the crime and that she last saw him that day between four and five o'clock in the afternoon. According to the police report, the crime was committed between about

---

**4.** The police report lists Nancy Willifred as Nancy Caldwell. She testified at defendant's sentencing hearing under the name of Willifred

and stated that she was the same person known as Nancy Caldwell.

5:45 and 6:45 p. m. Willifred said that defendant had not been drinking too much that day but had been taking more pills. Defendant was "mumbling" when he left her.

The fact that defendant was to some degree intoxicated is not, by itself, a mitigating circumstance. Whether defendant's intoxication is a mitigating circumstance depends on whether "[h]is capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." A.R.S. § 13–454 F(1) [5]

Willifred's testimony falls short of proving the necessary degree of impairment from intoxication. Not only is her testimony inexact as to defendant's level of intoxication at the time of the crime, it is also devoid of any description of how defendant's intoxication affected his conduct, other than that he was "mumbling." Defendant did not mention the influence of drugs or alcohol in his confession, nor did he testify at his sentencing hearing. We agree with the trial court that defendant has failed to prove that his intoxication was a mitigating circumstance.

Because two aggravating circumstances exist and no mitigating circumstances are present, the sentence is affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.

---

**5.** Defendant says that intoxication was not available as one of the mitigating circumstances expressly listed in the statute. Arguably A.R.S. § 13–454 F(1) would cover intoxication, although we have indicated in an earlier case that only mental disorders were intended as impairments. *See State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976). In any case, after our decision in *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied,* 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), in which we held that all mitigating circumstances must be considered, intoxication must now be included as a form of impairment.