617 P.2d 1134

**STATE of Arizona, Appellee,**

v.

**Loris Lee McVAY, Appellant.**

**No. 4842.**

Supreme Court of Arizona,
In Banc.

Sept. 16, 1980.
Rehearing Denied Oct. 15, 1980.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Division by Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for appellee.

T. W. Price, Phoenix, for appellant.

HOLOHAN, Vice Chief Justice.

This is an appeal by Loris Lee McVay from a conviction after trial by jury of the crime of deadly assault by a prisoner. Appellant was sentenced to life imprisonment, to be served consecutively with other sentences he is currently serving. Taking jurisdiction pursuant to A.R.S. § 13–4031, we affirm.

The facts of this case concern an incident which took place at Arizona State Prison on May 11, 1979. While in an exercise yard of the prison, inmate Robert Brookover was beaten and stabbed numerous times. The only other individuals present were the appellant and his half–brother, Larry Evans, both inmates at the prison. Evans and the appellant were brought before the Disciplinary Court of the prison on a charge of violating prison rules by assaulting an inmate. They were found guilty, and the Disciplinary Court set the punishment as 30 days in isolation.

Confinement in the isolation cells of Arizona State Prison entails the loss of a number of privileges. Inmates in isolation are allowed to shower and exercise only three times per week, do not receive dessert with their meals, and are not allowed to have televisions or radios, tobacco, shoes, and other items of personal property in their cells. More significantly, the temperature in the isolation cells is hotter than in the rest of the prison, due to a less effective evaporative cooling system. The precise temperature of the isolation cells is one of the disputed facts, with the appellant claiming that it never went below 110 degrees in the summer and the prison officials countering with temperature estimates in the range of 85–90 degrees.

Subsequent to his confinement in the isolation section of the prison, the investigating officers conducted separate interviews with Evans and the appellant. At the second interview with Evans, he gave a statement concerning the stabbing. Evans was released from isolation shortly after he gave his statement. Appellant subsequently gave a statement which was introduced against him at his trial.

Prior to trial appellant moved to suppress the statement given in prison claiming that it was involuntary. After an evidentiary hearing, the motion was denied. Appellant urges that this ruling was error.

The sole issue in this appeal is whether appellant's confession was involuntary and, therefore, rendered inadmissible under the due process clause of the Fourteenth Amendment to the United States Constitution. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Although the appellant was advised of his constitutional rights prior to the taking of his statement, he advances two arguments in favor of the proposition that his confession was involuntary. First, he argues that his confession was induced by a promise that in return he would be released from isolation. Second, he argues that the conditions in isolation were so intolerable that his free will was overborne, thereby rendering the confession involuntary.

I

▆ In regard to appellant's first argument, that the admissibility of his confession was negated by the alleged promise of removal from isolation, we find this unpersuasive for at least two reasons. First, the record supports the proposition that the investigating officers never made any promise at all. We recognize and accept the principle that a confession, in order to be voluntary within the meaning of the due process clause, must not have been obtained by any direct or implied promises, however slight. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *State v. Torres*, 121 Ariz. 110, 588 P.2d 852 (1978). However, where the alleged promise is couched in terms of a mere possibility or an opinion, this is not deemed to be a sufficient promise so as to render a confession involuntary. *State v. Steelman*, 120 Ariz. 301, 310, 585 P.2d 1213, 1222 (1978); *State v. Jordan*, 114 Ariz. 452, 455, 561 P.2d 1224, 1227 (1976), *vacated on other grounds*, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978).

▆ The alleged promise in the present case is analogous to the one in *State v. Hall*, 120 Ariz. 454, 586 P.2d 1266 (1978). In that case, the defendant was suspected of robbery and was told by authorities that if he cooperated, it would " 'possibly have an ef-

fect on the sentencing.' " This court in *Hall* held that statement to constitute a mere possibility rather than a promise. Similarly, the record in the instant case presents the same sort of statement framed in the form of an opinion regarding a possibility. Officer Cavender testified at trial as follows:

"Q. Did you tell him [appellant] that you could get him out of the hole [isolation]?

A. I did not. I mentioned it to Mr. McVay that in the spirit of cooperation I would mention it to Mr. Aveneti [the warden] and that would be Mr. Aveneti's decision as to whether he remained in the hole or whether he was taken out."

As is apparent from the above exchange, the record supports the notion that the investigating officers merely told the appellant that the fact of his cooperation would be made known to the warden and it was *possible* this would have an effect on his request to be released from isolation. Admittedly, there is a conflict in the record on this point, with the appellant describing a forceful and unambiguous promise as having been made to him that he would be released from isolation if he made a statement. The trial court resolved this conflict in favor of admitting the confession. As we stated in *State v. Jordan, supra*, "The trial court's determination of the admissibility of a confession will not be upset on appeal absent 'clear and manifest' error." 114 Ariz. at 455, 561 P.2d at 1227. *See also State v. Arnett*, 119 Ariz. 38, 44, 579 P.2d 542, 546 (1978). A review of the record convinces us there is no such error here.

The second factor in favor of finding there to be no promise here is that appellant initiated the question of his release from isolation. When Evans was being released from isolation, he shouted to appellant to cooperate in order to obtain release. Subsequently, appellant met with Officer Cavender and immediately brought up the subject of his release from isolation. Thus, if there was a "deal" made whereby appellant would be released from isolation in

exchange for confessing, appellant's initiation of that "deal" protects the validity of the confession. In the words of this court in a similar case: "[Where] the proposal for the 'deal' came from the defendant, the promise did not interfere with the appellants' exercise of a free volition in giving the confession.... '[Where] the promise was *solicited* by the accused, freely and voluntarily, . . . they cannot be heard to say that in accepting the promise they were the *victims* of compelling influences.'" *State v. Jordan*, 114 Ariz. at 454, 561 P.2d at 1226.

## II

 Appellant next argues that the conditions in isolation were so intolerable as to overbear his free will, thereby rendering his confession involuntary. We recognize the principle that conditions of confinement can be so severe that the prisoner may be willing to give a confession merely to escape the intolerable imprisonment. In such a situation, the prisoner's will is overborne and any resulting confession is deemed involuntary. However, in judging the coercive effect of the conditions of confinement, we are dealing with a matter of degree.

The controlling Arizona case on this question is *State v. Arnett*, which held that the conditions must constitute more than merely "uncomfortable surroundings." 119 Ariz. 38, 43, 579 P.2d 542, 547 (1978). The examples of "intolerable" conditions cited by *Arnett* contain a common thread of relatively outrageous conduct by the authorities (e. g.–being held incommunicado while in an injured condition; bread and water diet; extremely primitive surroundings). *Id.* In contrast, the facts of the instant case point much more strongly toward the idea that, while the isolation cells at Arizona State Prison would hardly be considered comfortable, neither are they intolerable enough to justify invalidating the confession on that ground. Isolated prisoners are not allowed to have televisions or radios, are deprived of dessert with their meals, and are allowed to shower and exercise only three times per week, none of which seems particularly intolerable. Indeed, the only condition of the isolation section which can reasonably be characterized as intolerable was the alleged excessive temperature in the cells and even on this point the record is in dispute. Evans testified that the cells were always at least 110 degrees and that they stayed "the same temperature all day, 24 hours a day." Officer Cavender testified that the temperature was closer to the mid–80 degree range and was not excessively uncomfortable. The trial court, in admitting the confession, apparently chose to believe the evidence presented by the state to the effect that the temperature was not intolerable. Since there is support for this conclusion in the record and we find no "clear and manifest error," we affirm this conclusion.

In addition to the issues presented by appellant, we have reviewed the entire record pursuant to A.R.S. § 13–4035(B) and find no fundamental error. The judgment and the sentence of the trial court are affirmed.

STRUCKMEYER, C. J., and CAMERON, HAYS and GORDON, JJ., concur.