664 P.2d 202

**STATE of Arizona, Appellee,**

v.

**Robert Lee WILLIAMS, Appellant.**

No. 5467.

Supreme Court of Arizona,
In Banc.

April 28, 1983.
Rehearing Denied June 8, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Bruce A. Burke, Tucson, for appellant.

CAMERON, Justice.

The defendant was convicted of kidnapping, A.R.S. § 13–1304, and first degree murder, A.R.S. § 13–1105, and appealed. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and 13–4035.

We must answer three questions on appeal:

1. Did the trial court err in admitting into evidence the substance of a telephone conversation held between the defendant and a deputy county attorney?
2. Did the trial court err in ruling that the defendant's confessions were voluntary and thus admissible?
3. Did the trial court err in refusing to disqualify the prosecutor?

The facts needed to determine the issues are as follows. The victim was discovered unclothed on the bed in her mobile home. Her hands were bound behind her back with a piece of rope, and she had been gagged with a strip of cloth torn from a shirt. She had been strangled to death by a rope which was tightened around her neck.

The body was discovered in a state of decomposition several days following death by the owners of the mobile home park. Foreign hairs were found on the body, which expert analysis later established to be microscopically indistinguishable from hair samples taken from the defendant. The defendant was arrested on charges of murder and kidnapping in May of 1981.

Counsel was initially appointed to represent the defendant. Later, in response to defendant's request, the trial court allowed the defendant to represent himself, while two attorneys were appointed as advisory counsel. The defendant's trial began on 10 November 1981, with the defendant conducting his defense based apparently on alibi. The state's case rested mainly on expert testimony relating to hair identification and a variety of incriminating statements made by the defendant. Particularly damaging to the defendant was a confession made in the early morning of 26 October 1981 to a sheriff's deputy and the lead detective in the homicide investigation. This confession was made following discussions between the defendant, the detective, and the prosecutor concerning the possibility of the defendant serving his sentences in a detention facility outside of Arizona.

The jury returned verdicts of guilty of first degree murder and kidnapping. A motion for a new trial was denied at sentencing on 11 December 1981. The defendant received a 14 year sentence for the kidnapping conviction, to be served consecutively to the life term for murder, both sentences to be served consecutively to two other convictions. Defendant appealed.

## ADMISSIBILITY OF TELEPHONE CONVERSATION

On 10 September 1981, a person later identified as the defendant called Deputy County Attorney Barbara Gelband and told her that on the previous weekend he picked up a female hitchhiker. In some detail, the defendant described how he took the victim to a motel and engaged in acts of bondage and intercourse with her. The conversation was taped. Defendant on appeal contends that the trial court erred by admitting into evidence this telephone conversation.

Defendant's advisory counsel on 28 September 1981 filed a motion in limine to suppress the tape recording of the conversation on the ground of lack of relevance. On 26 October 1981, at the hearing on the motion, the defendant indicated that he did not want to suppress the statement. After questioning by the court, at which time the defendant indicated that no threats or promises had been made, the court found that the defendant waived his right to suppress the statement.

On 2 November 1981, the trial court advised counsel that he had received a letter from the defendant in which the defendant alleged that he was threatened by a detective and the prosecuting attorney into waiving the motion to suppress. The trial court conducted a hearing and determined that this was not the case, and that the waiver was knowingly, intelligently and voluntarily made. Later, during the trial, the court on 17 November 1981 heard argument on whether the Gelband conversation was admissible on the ground of relevance, and ruled the evidence relevant.

We believe, as the trial court found, that the waiver of the motion to suppress was knowingly, intelligently and voluntarily made. We need consider only whether the statement was relevant, it being clear that the statement made to Officer Gelband was voluntary on the defendant's part.

The Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable * * * than it would be without the evidence." Rule 401, Arizona Rules of Evidence, 17A A.R.S. We believe the substance of the Gelband conversation shows knowledge of the actual crime, and is evidence having a tendency to make the fact of defendant's participation in the crime more probable "than it would be without the evidence."

The following similarities exist between the facts of the crime and the substance of the Gelband conversation:

(1) In his second confession, the defendant states that "we had a relationship in the * * * shower." In the Gelband conversation, the defendant states that he washed the woman whom he had picked up hitchhiking while the two were in a motel room shower.

(2) The victim was found with her hands tied behind her. In the Gelband conversation, the defendant stated that he tied the woman's hands behind her back with strips cut from the motel bedspread.

(3) The victim was gagged with a strip of cloth torn from a shirt. In the Gelband conversation, the hitchhiker allegedly was gagged by the defendant with a strip of cloth.

(4) In the defendant's second confession, he stated that before intercourse he licked a substance from the victim's body. In the Gelband conversation, the defendant stated that before intercourse he licked water from the woman's body.

(5) In the defendant's second confession, he stated that he used a pillow in engaging in intercourse with the victim. In the Gelband conversation, the defendant stated that he used a pillow in engaging in oral sex with the woman.

■ We believe that the facts related by the defendant in the telephone conversation are sufficiently similar to the uncontested facts of the case and to the incidents of the crimes as described by the defendant in his confessions, and reflect knowledge that only the perpetrator could possess. It was evidence which made the existence of defendant's involvement in the murder more probable "than it would be without the evidence," Rule 401, supra, and was properly admitted in evidence.

## VOLUNTARINESS OF CONFESSIONS

A female probation officer interviewing the defendant in detention on an unrelated charge reported to the Pima County Jail authorities that the defendant exposed his genitals during their interview. The jail authorities forwarded the report through the police department to Detective Pantke, the lead detective in the victim's homicide investigation. Pantke advised Deputy Brennan that he did not want to contact Williams, and asked her to interview the defendant about the indecent exposure report. Brennan advised the defendant on arriving at the jail on 26 August 1981 that she wished to discuss the indecent exposure episode. The defendant informed Brennan of the reason for his detention—that he was in jail on a murder and kidnapping. Brennan stated that she was not there to investigate the murder and kidnapping. Nonetheless, defendant proceeded to bring up the murder charge.

The following day, Brennan contacted the defendant in response to repeated requests by the defendant to speak to her. During this second interview, Brennan asked no questions about the homicide. According to Brennan, the defendant initiated conversation about the homicide during the second interview. The next contact Brennan had with the defendant was on 25 October 1981, when the defendant asked Brennan to come over to the jail to speak to him about an assault he alleged was committed upon him by detention officers. The defendant indicated that he was considering pleading guilty to the murder charge. His confessions later followed.

■ Defendant contends that these various confessions and statements were induced by promise and coercion. The defendant alleges four grounds why the statements should not be admitted. The defendant first alleges that the authorities used a female officer to interrogate the defendant, knowing his predilection to discuss sexual matters with females, so that the defendant would gradually focus the discussions on his involvement in the murder. We do not agree. The testimony of Brennan at the pretrial hearing and the trial do not show police conduct tantamount to coercion or other psychological influence overbearing the defendant's free will, rendering the confessions involuntary. *Cf. State v. Edwards,* 111 Ariz. 357, 361, 529 P.2d 1174, 1178 (1974) (defendant's will overborne). Brennan was not familiar with the defendant prior to the

initial contact; she did not interrogate the defendant about the homicide; neither did she cajole, threaten or offer to bargain to obtain information. Also, on cross-examination, Deputy Brennan denied that Detective Pantke and prosecutor Paul Banales had discussed "sending in a pretty girl to go in and talk to" the defendant. We do not agree with the defendant that the mere presence of a female deputy rendered his confessions involuntary.

The second prong of the defendant's attack on the voluntariness of his confessions is that the state obtained them in exchange for a promise that he could serve his time in prison out of state. The defendant allegedly relied on representations made by Banales before he confessed on 26 October as an inducement to confess. Banales testified that he indicated to the defendant that he would recommend that defendant serve his time out of state:

> If I didn't tell him directly that I would, my words gave him that distinct impression, there's no doubt in my mind.

The defendant's position is that the promise to recommend that the sentence be served outside Arizona, on which he relied in making his confessions, is an impermissible inducement that rendered admission of his confessions into evidence reversible error. We disagree.

█ Admittedly, a confession to be voluntary must not have been obtained by any direct or implied promises, however slight. *State v. McVay,* 127 Ariz. 18, 20, 617 P.2d 1134, 1136 (1980). But we have held that where a defendant solicits a "deal" or initiates bargaining with the authorities, an offer upon which the accused claims to have relied in making his confession does not necessarily interfere with his free exercise of volition. *State v. McVay,* supra, at 20–21, 617 P.2d at 1136–37; *State v. Jordan,* 114 Ariz. 452, 454–55, 561 P.2d 1224, 1226–27 (1976), sentence vacated on other grounds, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978). In the instant case, the record is clear that the offer of assistance was solicited by the defendant. He cannot now argue that he was the victim of the prosecutor's compelling influences.

█ The third prong of the defendant's attack on the voluntariness of his confession is that Detective Pantke and Paul Banales threatened him, bringing to bear psychological pressure for a confession. On direct examination, Detective Pantke testified that neither he nor the prosecutor threatened or physically abused the defendant in any way. Extensive cross-examination failed to show threats or abuse by the authorities calculated to obtain a confession. Also, in the recording of the defendant's confession of 26 October, the defendant stated that no one hit him or threatened him to obtain a confession. We find no error.

█ The final challenge made by the defendant to the voluntariness of his confessions is that his agitated mental condition, combined with the "nature of the questioning by the State," produced a coercive atmosphere in which his will was overborne. Defendant points to no portion of the record to support this assertion, and our review of the record indicates that nothing about his interrogation indicates impermissible conduct by the authorities.

We find that there was no abuse of discretion by the trial court in determining that the defendant's confessions were admissible. *State v. Edwards,* supra, 111 Ariz. at 361, 529 P.2d at 1178 (1974), citing *State v. Pulliam,* 87 Ariz. 216, 349 P.2d 781 (1960).

## DISQUALIFICATION OF PROSECUTOR

The defendant's advisory counsel moved before trial to disqualify Paul Banales as prosecutor in this matter. The ground asserted for disqualification was that Banales' testimony was critical to establishing whether the defendant's confessions were induced by promises of aid in seeking out of state incarceration or were coerced by threats. Banales, along with Detective Pantke, was present at the "negotiations" that led to the defendant's confession on 26 October. Banales testified at the pretrial hearing on the motion to suppress the con-

fession that Detective Pantke was present during the entire discussion between the prosecutor and the defendant, and that no words passed between them out of Pantke's hearing.

In denying the defendant's motion, the trial court entered the following order:

THE COURT DENIES the Defendant's Motion to Disqualify Attorney for the State on the condition that the defense may 1. call the County Attorney to testify, 2. read a stipulation to the Jury that was discussed earlier, 3. read the transcript of the County Attorney's testimony from the motion to suppress on voluntariness.

The defendant chose to read into the trial record the transcript of Banales' testimony from the hearing. He now contends that the court's failure to disqualify prosecutor Banales was an abuse of discretion requiring reversal of his conviction.

■ The bases for defendant's contention are two. First, by reading the transcript of Banales' hearing testimony alone, the defendant was denied his sixth amendment right to cross-examine a witness. We do not agree that the defendant was denied the right to cross-examine the prosecutor in the instant case. The prosecutor was cross-examined by the defendant, and examined at length by the court, at the time of his pretrial testimony, which portion of the transcript was read into evidence. The defendant himself chose not to call the prosecutor as a witness, despite the availability of that option to him. Thus his inability to cross-examine the prosecutor at trial was of his own design.

■ Second, the defendant contends that the presence of Banales as both prosecutor and a material witness violated the defendant's due process right to a fair and impartial jury trial. Our Court of Appeals has stated:

* * * Although it is generally held that a prosecutor is competent to testify in a criminal case for the State even though he is engaged in the prosecution of the case, courts have generally disapproved the practice except in the extraordinary circumstances. *See,* Annot., 54 A.L.R.3d

100 § 4 (1974). In some instances a prosecutor's testifying in a case he is prosecuting has resulted in reversal of the defendant's conviction. (Citations omitted.) *State v. Howard,* 27 Ariz.App. 339, 341, 554 P.2d 1282, 1284 (1976).

■ We agree with the Court of Appeals that the standard of review for disqualification of the prosecutor by the trial court is whether the court abused its discretion. *See State v. Bishop,* 118 Ariz. 263, 266, 576 P.2d 122, 125, sentence vacated on other grounds, 439 U.S. 810, 99 S.Ct. 69, 58 L.Ed.2d 103 (1978). In the instant case, the circumstances of the prosecutor's involvement prior to the taking of the confession was the only instance where Banales was a material witness. We do not believe that the range of tactical alternatives afforded the defendant by the trial court amounted to an abuse of the court's discretion on the disqualification issue. *See also State v. Parker,* 128 Ariz. 107, 111–112, 624 P.2d 304, 308–09 (App.1980), judgment affirmed, 128 Ariz. 97, 624 P.2d 294 (1981). The trial court correctly gave the defendant as many options as it could to overcome any prejudice that may have arisen from the fact that the prosecutor was also a material witness. We find no error.

■ A word of caution, however, is indicated. We note the increasing number of cases before this court where the prosecutor is also a witness on some point in issue, usually the admissibility of a confession or statement made by the defendant. This we believe skirts the line not only of the Code of Professional Responsibility, DR5–102, Rule 29(a), Rules of the Supreme Court, 17A A.R.S., but can be a violation of due process. *See* Annotation, 54 A.L.R.3d 100. Where there is prejudice, we would be compelled to reverse on this point. Prosecuting attorneys in the future should avoid putting themselves in this position.

We have reviewed the record for fundamental error, A.R.S. § 13–4035, and find none.

The defendant's convictions are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.