SUPREME COURT OF ARIZONA
En Banc

STATE OF ARIZONA,                      )  Arizona Supreme Court
                                       )  No. CR-10-0177-AP
                        Appellee,      )
                                       )  Maricopa County
               v.                      )  Superior Court
                                       )  No. CR2006-007790-001 DT
GILBERT MARTINEZ,                      )
                                       )
                        Appellant.     )
                                       )  **O P I N I O N**
                                       )
_____)


Appeal from the Superior Court in Maricopa County
The Honorable Rosa Mroz, Judge

**AFFIRMED**
_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                    Phoenix
     By   Kent E. Cattani, Division Chief Counsel
          Jeffrey A. Zick, Section Chief Counsel
          Jon G. Anderson, Assistant Attorney General
          Criminal Appeals/Capital Litigation Section
Attorneys for State of Arizona

DROBAN & COMPANY, PC                                          Anthem
     By   Kerrie M. Droban
Attorney for Gilbert Martinez
_____


**B R U T I N E L**, Justice

¶1        A jury found Gilbert Martinez guilty of one count of
first degree burglary, four counts of aggravated assault, four
counts of kidnapping, one count of theft, and one count of first
degree murder.  After a mistrial in the penalty phase, a second
jury determined he should be sentenced to death.  We have

jurisdiction over this automatic appeal under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 13-4031 (2010).

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶2      On March 31, 2006, Betty L.'s daughters, Karen B. and Colleen J., and their husbands, Forest B. and Vern J., were visiting Betty and her husband, Laurel L., at their home in Sun City.[1] Martinez and Robert Arbolida watched the home, planning to burglarize it. They left to get a gun, returning to the house after its six occupants had gone to bed.

¶3      Martinez broke a patio door at the back of the house, went inside, and let Arbolida in through the kitchen door. Hearing a loud noise, Betty and Laurel went to investigate. In the hallway, they encountered the two intruders, who were wearing masks and gloves. Martinez and Arbolida pushed Betty and Laurel into the room where Karen and Forest were staying. Martinez threatened them, yelling profanities and telling them to cooperate or he would kill them. When Laurel moved too slowly because of his age and asthma, Martinez became frustrated and pushed him. When Forest attempted to help Laurel, Martinez pistol-whipped Forest, permanently injuring his eye. Martinez then directed Arbolida to bind the four victims with zip ties. Apparently having seen a third woman earlier when casing the

---

[1]      "We view the facts in the light most favorable to upholding the verdicts." *State v. Chappell*, 225 Ariz. 229, 233 ¶ 2 n.1, 236 P.3d 1176, 1180 n.1 (2010).

2

house, Martinez said to Arbolida, "Let's go find the other bitch."

¶4        Colleen and Vern heard the commotion and Martinez's statement from their bedroom.  Vern pushed Colleen into the closet and closed the door.  Vern, weaponless, went to the bedroom door to stand between his wife and the intruders.

¶5        Martinez met Vern in the hallway, a scuffle ensued, and Martinez fatally shot Vern.  Martinez and Arbolida then fled with various items belonging to the victims.  They went to Martinez's sister's house, where they cleaned blood off themselves and divided the stolen property.

¶6        Martinez was later arrested and indicted on twenty-three counts, including felony murder, stemming from this burglary and six other burglaries and robberies in the same area.  The State sought the death penalty, alleging two aggravating circumstances:  Martinez previously had been convicted of a serious offense, A.R.S. § 13-751(F)(2), and had committed the murder for pecuniary gain, § 13-751(F)(5).

¶7        The trial court severed the charges by occurrence and, after the State dismissed charges related to one of the burglaries, ordered six separate trials.  Martinez was acquitted on one burglary ("the Krusenstjerna burglary"), but found guilty on all other charges.

¶8        The jury in this case found Martinez guilty of eleven

charges, including felony murder, relating to the burglary of Betty and Laurel's home. The jury then found both alleged aggravating circumstances proven beyond a reasonable doubt. It also found that Martinez actually killed Vern and was a major participant in his murder. The jury, however, hung in the penalty phase, and the trial court declared a mistrial.

¶9      Following a second penalty-phase trial, a new jury determined Martinez should be sentenced to death. The court also sentenced him to 124 years' imprisonment on the non-capital charges.

## II. ISSUES ON APPEAL

### A. Denial of motions to strike potential jurors

¶10     Martinez challenges the trial court's denial of his motions to strike prospective jurors 2, 4, 15, 27, 44, and 59 in the first trial and jurors 4, 10, and 105 in the second penalty phase trial.[2] Because none of those jurors served on either of the juries that decided this case, "any error by the trial judge in refusing to strike them [is] not reversible error absent prejudice to [Martinez]." *State v. Moore*, 222 Ariz. 1, 18 ¶ 99, 213 P.3d 150, 167 (2009). Martinez is not entitled to relief

---

[2]     Martinez alleges violations of our state constitution on this and other issues. Because he has not separately argued any Arizona constitutional claims, however, we do not address them. *See, e.g.*, *State v. Dean*, 206 Ariz. 158, 161 ¶ 8 n.1, 76 P.3d 429, 432 n.1 (2003); *State v. Altieri*, 191 Ariz. 1, 2 ¶ 4 n.1, 951 P.2d 856, 867 n.1 (1997).

4

because he has not alleged or shown any prejudice, and "[n]o evidence suggests that the sentencing jury was not fair and impartial." *Id.; see also State v. Martinez*, 218 Ariz. 421, 429 ¶ 35, 189 P.3d 348, 356 (2008) ("We need not address this argument because the juror in question was not seated and [the defendant] makes no claim that any of the jurors who decided his case should have been struck for cause.").

**B. Admission of bag with ammunition**

¶11    Martinez asserts that the trial court, in the guilt phase, abused its discretion by admitting exhibit 344, a brown bag and its contents, and denying his subsequent motion for a mistrial.

¶12    A detective testified that when officers executed a search warrant at Martinez's home, they found in the garage a brown bag containing a gun case, a 9 mm handgun magazine, six spent 9 mm casings, two boxes of .357 Magnum ammunition, a box of .38 Special ammunition, an empty .22 caliber ammunition box, loose .22 caliber rounds, a live 9 mm cartridge, an empty knife scabbard, a pair of brown gloves, and ear plugs.

¶13    During the detective's testimony, the State offered into evidence the bag and its contents, along with zip ties, labeled exhibit 345, also found in Martinez's garage.  Martinez objected only to the admission of the zip ties.  The court admitted both exhibits.  The State then had the detective remove

each item from the bag and describe it. Martinez objected on relevance grounds to the bag's contents. The trial court overruled his objection, noting that the bag had already been admitted. After a break, Martinez moved for a mistrial "based on the prejudice of those items in that [bag]." The court denied the motion, finding the contents of the bag "pretty innocuous."

¶14 Because Martinez did not object before the exhibit was admitted into evidence, we review for fundamental error.[3] *State v. Henderson*, 210 Ariz. 561, 567 ¶ 19, 115 P.3d 601, 607 (2005); *see* Ariz. R. Evid. 103(a)(1). To prevail under this standard, Martinez must first establish that an error occurred, then show that the error was fundamental in nature and caused prejudice. *State v. Hargrave*, 225 Ariz. 1, 8 ¶ 13, 234 P.3d 569, 576 (2010).

¶15 Evidence of ammunition other than 9 mm, the caliber used to kill Vern, was irrelevant and should not have been admitted. But even if the trial court erred in admitting the contents of the bag, Martinez has not shown prejudice. As the trial court stated, in context the evidence was innocuous, and the State never suggested that these items were connected to the

---

[3] The State noted that this exhibit had been marked and available for Martinez to view for months, and Martinez did not dispute that assertion.

crime or that they confirmed Martinez as the killer. *See United States v. King*, 254 F.3d 1098, 1101-02 (D.C. Cir. 2001) (finding admission of evidence that defendant possessed a knife harmless because it was "tangential to the Government's case").

**C. Admission of nineteen prior offenses to prove (F)(2) aggravator**

¶16    Martinez argues that the trial court erred in allowing the State to use nineteen prior serious felony convictions to prove the (F)(2) aggravator, contending this evidence was unduly prejudicial and denied him due process.  We review a trial court's admission of evidence in the aggravation phase for an abuse of discretion.  *See State v. Tucker*, 215 Ariz. 298, 313 ¶ 46, 314-15 ¶ 58, 160 P.3d 177, 192, 193-94 (2007).

¶17    Before trial, the State noticed its intent to prove the (F)(2) aggravating circumstance by using Martinez's convictions from the five prior trials, a burglary conviction from 1999, and the non-murder convictions arising from the burglary of Betty and Laurel's home.  Martinez filed a "Motion to Preclude Extraneous (F)(2) Aggravator Evidence," arguing that evidence of any serious offenses extraneous to those that occurred with the murder would be unduly prejudicial and cumulative and thus barred by Arizona Rule of Evidence 403.  The trial court denied the motion.

¶18    The (F)(2) aggravator requires proof beyond a

7

reasonable doubt that:

> The defendant has been or was previously convicted of a serious offense, whether preparatory or completed. Convictions for serious offenses committed on the same occasion as the homicide, or not committed on the same occasion but consolidated for trial with the homicide, shall be treated as a serious offense under this paragraph.

§ 13-751(F)(2). Although we have never squarely addressed whether to limit the number of prior convictions the state can use to prove this aggravating circumstance, we have upheld without comment (F)(2) findings based on multiple prior convictions. *See, e.g.*, *State v. Phillips*, 202 Ariz. 427, 438-39 ¶¶ 56-57, 46 P.3d 1048, 1059-60 (2002) (finding (F)(2) aggravator supported by evidence of twenty-seven prior convictions).

**¶19** The trial court correctly observed that the "decision to offer evidence of aggravation or not offer such evidence is the responsibility of the prosecutor." *State v. Murphy*, 113 Ariz. 416, 418, 555 P.2d 1110, 1112 (1976). But because § 13-751(B) provides that the Arizona Rules of Evidence govern the aggravation phase, the trial court must exclude evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Ariz. R. Evid. 403. Therefore, the pertinent inquiry is whether the probative value of the evidence of Martinez's nineteen other convictions was substantially

8

outweighed by the danger of unfair prejudice or other factors identified in Rule 403.

**¶20** Martinez argues that evidence of only one prior conviction is necessary to prove the (F)(2) aggravator. Although that is true, we have never suggested that once sufficient evidence is admitted to prove an aggravator, the state cannot present further evidence in support of that aggravator. Martinez has not challenged the validity of any of the nineteen convictions or otherwise identified how the State's proving the (F)(2) aggravator with multiple convictions unfairly prejudiced him in the aggravation phase.

**¶21** Martinez's claim of prejudice arises from the State's later use of the evidence in the penalty phase. Although the rules of evidence do not apply to the penalty phase, A.R.S. § 13-751(C), trial courts, pursuant to the Due Process Clause of the Fourteenth Amendment, must still exclude evidence that is unfairly prejudicial. *See State v. Pandeli*, 215 Ariz. 514, 527-28 ¶ 43, 161 P.3d 557, 570-71 (2007) (noting that the determination of unfair prejudice in penalty phase "involves fundamentally the same considerations" as prejudice determinations under Arizona Rule of Evidence 403). "Not all harmful evidence, however, is unfairly prejudicial." *State v. Mott*, 187 Ariz. 536, 555-56, 931 P.2d 1046, 1055-56 (1997). "Unfair prejudice results if the evidence has an undue tendency

9

to suggest decision on an improper basis, such as emotion, sympathy, or horror."  *Id.* at 545, 931 P.2d at 1055.

¶22    Here, as the trial court found, each conviction went to the "severity of the (F)(2) aggravator."  Each was probative in the penalty phase to show Martinez's "character and propensities" and to strengthen the weight of the aggravator. *See State v. Gretzler*, 135 Ariz. 42, 54, 659 P.2d 1, 13 (1983) (noting that "the purpose of an aggravation/mitigation hearing is to determine the character and propensities of the defendant" because "[t]he punishment should fit the offender" (internal quotation omitted)); *State v. Howell*, 868 S.W.2d 238, 261 (Tenn. 1993) ("[T]he effect of the aggravating circumstance on sentence may increase where there is proof of more than one prior violent felony conviction.").  In Arizona, an aggravating circumstance not only qualifies a defendant for the death penalty, but is also considered "in determining whether to impose a sentence of death."  A.R.S. § 13-751(F); *see also id.* § 13-752(D), (G). Therefore, the trial court correctly found the prior convictions to be highly probative.

¶23    Nor did the trial court abuse its discretion in implicitly finding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. In death penalty sentencing, the trier of fact must make an individualized decision based on the "character and record of

10

the individual offender and the circumstances of the particular offense." *Romano v. Oklahoma*, 512 U.S. 1, 7 (1994) (internal quotation omitted); *see also* A.R.S. §§ 13-751(G), -752(G). Such evidence will often be prejudicial, but evidence of prior convictions is not unfairly prejudicial because it is highly relevant to making an individualized sentencing decision.

**D. Prosecutorial misconduct**

¶24    Martinez argues that the prosecutor's "pervasive prosecutorial misconduct" mandates reversal of his death sentence and that Double Jeopardy bars retrial. Prosecutorial misconduct warrants reversal if "(1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying [the] defendant a fair trial." *State v. Anderson*, 210 Ariz. 327, 340 ¶ 45, 111 P.3d 369, 382 (2005) (internal quotation omitted). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Hughes*, 193 Ariz. 72, 79 ¶ 26, 969 P.2d 1184, 1191 (1998) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

¶25    This Court separately reviews "each instance of alleged misconduct, and the standard of review depends upon whether the defendant objected." *State v. Morris*, 215 Ariz.

324, 335 ¶ 47, 160 P.3d 203, 214 (2007).  If Martinez objected, the Court reviews for harmless error; if he did not, we review for fundamental error.  *State v. Gallardo*, 225 Ariz. 560, 568 ¶ 35, 242 P.3d 159, 167 (2010).

### 1. Courtroom conduct

¶26    The first allegation of misconduct concerns the lead prosecutor's courtroom conduct throughout both trials.  During voir dire in the guilt phase, the court warned the prosecutor to watch her conduct because, she "tend[ed] to give a big sigh, audible sigh, and throw up [her] hands and roll [her] eyes" when the court ruled against her.  But the judge also noted this conduct was infrequent.  Later, defense counsel noted on the record that the same prosecutor continued to roll her eyes during witness testimony.  The trial court stated it had not seen the prosecutor do this, but admonished all the attorneys to "try to keep [their] facial expressions neutral as to not influence the Jury one way or the other."

¶27    After the first penalty phase ended in a mistrial, Martinez moved to strike the notice of intent to seek the death penalty based on the prosecutor constantly "rolling her eyes;" "quipping," "ad-libbing," and her "running commentary on various events as they occur during trial;" as well as her "propensity to display irritation, displeasure or skepticism over rulings by the Court adverse to her."  Defense counsel said a juror

12

mentioned this conduct during a "post-deadlock debriefing," in which the juror said the lead prosecutor's eye-rolling was "counter-productive and damaging to her credibility." The trial judge denied the motion, finding that the prosecutor did not commit any intentional misconduct and that her behavior did not prejudice the defendant. The judge noted that "the one juror who did make a comment said it damaged [the prosecutor]'s credibility. And, in fact, the jury deadlocked . . . on the penalty for the Defendant."

¶28 After the second penalty phase, Martinez moved for a new trial, based in part on prosecutorial misconduct. He again alleged that the prosecutor engaged in both "vouching and ex-parte communication" with the jury throughout the trial by making "various facial expressions." He said he did not make a motion during the trial because the conduct came to light only after the verdict, when a juror likened the prosecutor's facial expressions to "a message board," noting "that he could tell her emotions throughout the trial." The trial court denied the motion.

¶29 Martinez argues that this misconduct constituted "improper 'vouching' and ex-parte communication with jurors." "Prosecutorial vouching takes two forms: '(1) where the prosecutor places the prestige of the government behind its [evidence] [and] (2) where the prosecutor suggests that

13

information not presented to the jury supports the [evidence].'" *State v. Newell*, 212 Ariz. 389, 402 ¶ 62, 132 P.3d 833, 846 (2006) (quoting *State v. Vincent*, 159 Ariz. 418, 423, 768 P.2d 150, 155 (1989)) (alterations in *Newell*). Any eye-rolling or disapproving facial expressions signaled that the State did not believe the evidence Martinez was presenting. Although improper, this behavior does not amount to vouching. Nor did it suggest that information outside the record supported the witness's testimony.

¶30      These allegations, however, are very troubling. It is highly inappropriate for "[a] prosecutor . . . to convey his [or her] personal belief about the credibility of a witness," *State v. Lamar*, 205 Ariz. 431, 441 ¶ 54, 72 P.3d 831, 841 (2003), and to relay to the jury disagreement with trial court rulings by facial expression. From the record, it is clear that this prosecutor's courtroom demeanor was inappropriate. However, the conduct during the first trial was documented only twice, and the trial judge was not certain it had occurred the second time. The trial court's firsthand observations and assessments are entitled to substantial deference in this context. Although one juror commented on the prosecutor's behavior, the record does not show reversible error based on this conduct.

¶31      Because Martinez did not object to any of the alleged misconduct during the second penalty phase, we review those

14

matters for fundamental error. *Gallardo*, 225 Ariz. at 568 ¶ 35, 242 P.3d at 167. The trial court was in the best position to assess the prosecutor's courtroom demeanor and its effect on the jury, *Newell*, 212 Ariz. at 402 ¶ 61, 132 P.3d at 846, and denied Martinez's motion for a new trial. Even if some misconduct occurred during the second trial, Martinez has not shown prejudice and is not entitled to relief on this ground. *See Henderson*, 210 Ariz. at 567 ¶ 20, 115 P.3d at 607.

¶**32** Martinez also argues that *Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984), mandates reversal and bars retrial in this case. But the misconduct in that case was continuous and well-documented. *Id*. at 102-03, 677 P.2d at 265-66. Here, although the prosecutor's courtroom conduct was inappropriate, it was confirmed only twice by the trial judge, who did not think it amounted to such pervasive misconduct as to bar retrial of the penalty phase.

¶**33** Although the prosecutor's conduct does not amount to reversible error, we again strongly disapprove of such courtroom behavior. Trial courts should promptly address this type of misbehavior by warnings to counsel and other steps as may be appropriate. Arizona attorneys pledge to "maintain the respect due to courts of justice and judicial officers," to "abstain from all offensive conduct," and to adhere to "a lawyer's creed of professionalism." Ariz. R. Sup. Ct. 31 (The Oath of

15

Admission to the Bar).  Eye-rolling, dramatic sighing, and other expressions of displeasure in a courtroom violate these standards.  This is unacceptable behavior from any attorney, but especially from a prosecutor, who serves as a "minister of justice."  *See Hughes*, 193 Ariz. at 80 ¶ 33, 969 P.2d at 1192; Ariz. R. Sup. Ct. 42, E.R. 3.8, cmt. 1.

### 2. Comparison between Martinez and the victims

¶34    The next alleged instance of misconduct occurred during the prosecutor's cross-examination of a defense expert during the first penalty phase.  The expert testified about the effect on Martinez of the domestic violence that occurred in his childhood home.  In response, and without objection, the prosecutor asked the witness about the impact on a widow of "hearing your husband being shot."

¶35    Because Martinez did not object to the prosecutor's question or move for a mistrial, we review for fundamental error.  *Gallardo*, 225 Ariz. at 568 ¶ 35, 242 P.3d at 167.  The question did not compare the victim to Martinez, but went to victim impact.  *See id.* at 567 ¶ 25, 242 P.3d at 166 ("Arizona law generally allows victim impact evidence during the penalty phase to rebut mitigation.").  The prosecutor did not later attempt to argue any comparison, and even if the question was objectionable, Martinez has failed to show the prejudice necessary to establish fundamental error.

16

### 3. First penalty phase closing argument

¶36    Martinez further argues the prosecutor committed misconduct during her first penalty phase closing argument when she said:

> Now Judge Mroz told you, quote, "that you are not required to find a connection between a mitigating circumstance and the crime committed in order to consider the mitigating evidence," but I suggest to you a lack of any connection between the mitigating circumstance and the murder is one thing to consider in deciding how compelling any mitigating circumstance[] you may find to have been proven really is.

Martinez did not object.

¶37    Martinez argues that this statement improperly implied that the jurors had to find a nexus between Martinez's childhood and the murder.  But the prosecutor did not tell the jury that a nexus was required; rather she said lack of a connection can be considered in determining "how compelling any mitigating circumstance[] you may find to have been proven really is." This is a proper statement of the law.  "Although a connection between a defendant's proffered mitigation and the crime is not required, the state may fairly argue that the lack of a nexus to the crime diminishes the weight to be given alleged mitigation." *State v. Prince*, 226 Ariz. 516, 539 ¶ 91, 250 P.3d 1145, 1168 (2011) (internal quotation omitted).

17

#### 4. Second penalty phase opening statement

¶38      The final alleged misconduct occurred during the State's opening statement in the second penalty phase. The prosecutor discussed the circumstances of the murder and the facts relating to each prior conviction used to support the (F)(2) aggravating circumstance. One of the prior acts the prosecutor discussed was a burglary of the Krustenstjernas' home, and she acknowledged that Martinez was acquitted on that charge. Later in her statement, she also talked about the State's expert who would testify and suggested Martinez malingered on that expert's test because he "will do anything, say anything, use anyone to save his own skin." After the prosecutor finished, Martinez moved for a mistrial, which the trial court denied.

¶39      Martinez argues that the prosecutor committed misconduct by mentioning the burglary for which he was acquitted and by insinuating that he had concocted his mental health mitigation. Because he objected to both lines of argument, we review for harmless error if prosecutorial misconduct occurred. *Gallardo*, 225 Ariz. at 568 ¶ 35, 242 P.3d at 167.

¶40      Any error in the prosecutor's mention of the Krustenstjerna burglary was harmless. The jurors were instructed that Martinez had been acquitted of that burglary and they should not use it against him. We presume jurors follow

18

instructions. *Tucker*, 215 Ariz. at 319 ¶ 89, 160 P.3d at 198.

¶41    As for the insinuation that Martinez concocted his mental health mitigation, the prosecutor's statement was not improper because it was supported by testimony from the State's expert that Martinez malingered on examinations. The trial court correctly denied the motion for mistrial. *See State v. Hallman*, 137 Ariz. 31, 37, 668 P.2d 874, 880 (1983) (noting first prong of test to determine if trial court should grant mistrial after improper remarks are made is whether it called jurors' attention to "matters that they would not be justified in considering in determining their verdict").

### 5. Cumulative effect

¶42    Martinez argues that the prosecutor's misconduct permeated the proceedings, rendering his trials fundamentally unfair. When reviewing such claims, this Court considers whether "the cumulative effect of the incidents shows that the prosecutor intentionally engaged in improper conduct and 'did so with indifference, if not a specific intent, to prejudice the defendant.'" *State v. Roque*, 213 Ariz. 193, 228 ¶ 155, 141 P.3d 368, 403 (2006) (quoting *Hughes*, 193 Ariz. at 80 ¶ 31, 969 P.2d at 1192).

¶43    The record does not support Martinez's argument. Although Martinez contends the prosecutor continuously was inappropriate in the courtroom, he objected only twice. Both

19

times, the trial court overruled the objections; it also denied Martinez's mistrial motions. The first penalty phase ended in a hung jury, and the trial court noted that any misconduct seemed to have prejudiced the jury against the State, not Martinez. Although the record reflects a few instances in the second penalty phase in which a witness and defense counsel noted that the prosecutor was "making faces" and "rolling [her] eyes," Martinez did not object and has not shown prejudice.

**E. Challenged rebuttal evidence**

¶44    Martinez contends that, in the second penalty phase trial, the trial court erred by admitting as rebuttal evidence four photographs of stolen items connected to other burglaries and testimony regarding his visit to a strip bar. "A trial court's ruling on the admission of evidence in the penalty phase is reviewed for an abuse of discretion." *State v. Harrod*, 218 Ariz. 268, 279 ¶ 38, 183 P.3d 519, 530 (2008). Because Martinez objected at trial to the admission of this evidence, if we find it was improperly admitted, we review for harmless error. *Henderson*, 210 Ariz. at 567 ¶ 18, 115 P.3d at 607.

¶45    During the penalty phase, the prosecution "may present any information that is relevant to any of the mitigating circumstances," A.R.S. § 13-751(C), and "any evidence that is relevant to the determination of whether there is mitigation that is sufficiently substantial to call for leniency,"

20

including "evidence that demonstrates that the defendant should not be shown leniency," § 13-752(G). Although our Rules of Evidence do not apply to the penalty phase, § 13-751(C), trial courts must exclude rebuttal "evidence that is either irrelevant to the thrust of the defendant's mitigation or otherwise unfairly prejudicial." *State v. Hampton*, 213 Ariz. 167, 180 ¶ 51, 140 P.3d 950, 963 (2006). "A judge's analysis in determining the relevance of rebuttal evidence involves fundamentally the same considerations as relevance and prejudice determinations under Arizona Rules of Evidence 401 and 403." *Pandeli*, 215 Ariz. at 528 ¶ 43, 161 P.3d at 571.

### 1. Photographs

**¶46** The State introduced photographs of some of the items the police found in a search of Martinez's sister's house. These items included a box that contained an empty zip tie bag, a boom box connected to another burglary, and a wheelbarrow that contained burnt items including a driver's license connected to the Krustenstjerna burglary. Because the zip tie bag, boom box, and wheelbarrow were not directly connected to Martinez and did not rebut his mitigation evidence, they were irrelevant and should have been excluded. The burnt driver's license should have been excluded because it related to the burglary for which Martinez was acquitted. Any probative value of that evidence was outweighed by the danger of unfair prejudice.

21

¶47     But the error in admitting this evidence was harmless. That Martinez's sister had some stolen items at her house was relatively minor compared to the strength of the aggravating circumstances and certainly did not influence the jury's decision that the mitigation was not sufficiently substantial to warrant leniency. Moreover, the jury was instructed to not use evidence relating to the Krustenstjerna burglary against Martinez. *See Tucker*, 215 Ariz. at 319 ¶ 89, 160 P.3d at 198.

### 2. Strip club

¶48     The State presented evidence that, during an interrogation after his arrest, Martinez claimed to have been at a strip club at the time of the murder. The State offered time-stamped video-surveillance photographs from the club that showed Martinez paying his entry fee at 1:28 a.m. the morning after the murder. Martinez objected to the admission of his statement and the photographs, arguing they were irrelevant and prejudicial. The trial court overruled the objection.

¶49     The court did not err in admitting this evidence during the penalty phase because it pertained to whether "the mitigation was sufficiently substantial to call for leniency." *See* A.R.S. § 13-752(G). Because Martinez claimed he had a low IQ and brain damage, the evidence that he claimed to have been at a club when the murder occurred showed he was able to fabricate an alibi. In addition, the trial court took the extra

22

precaution of precluding the State from referring to the club as a "strip club" to minimize any unfair prejudice.

**F. Admission of accomplice's prior statements in second penalty phase**

¶50     Martinez argues that the trial court violated his Sixth Amendment right to confrontation by allowing the State to introduce in the second penalty phase his accomplice's statements through a detective's testimony.

¶51     In the guilt phase, Martinez's accomplice, Robert Arbolida, testified for four days.  He testified about the burglary and murder, stating that Martinez was the shooter and had attempted to dispose of evidence at his sister's house. Martinez's counsel cross-examined Arbolida for two days, eliciting testimony showing he had made inconsistent statements to police.

¶52     Before the second penalty phase, the State noticed its intent to introduce through Detective Acosta some of Arbolida's statements that implicated Martinez as the shooter and that provided details about the burglary.  Martinez objected, arguing that this testimony violated his Sixth Amendment right to confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004). The trial court overruled Martinez's objection, citing *State v. McGill*, 213 Ariz. 147, 140 P.3d 930 (2006).

¶53     During the second penalty phase, Detective Acosta

23

testified about the statements Arbolida had made to him, including details of the burglary, the fact that Martinez shot Vern, and subsequent events. Before completing its direct examination, the State asked the trial court to limit cross-examination and not allow defense counsel to "go over all the inconsistencies that Arbolida ever said" because that would be attacking the underlying conviction and would be irrelevant, improper, and a "needless consumption of time." Defense counsel stated that he intended to probe the inconsistencies and that it would not be "fair for the State to be able to present this sanitized version" and to "cherry-pick the facts." The trial court precluded Martinez from revisiting all the inconsistent statements Arbolida made because they were only relevant to Martinez's guilt and the *Enmund/Tison*[4] finding, not Martinez's mitigation. But the court indicated that if the inconsistent statements were relevant to mitigating factors, it would allow Martinez to ask about them. Martinez protested the trial court's ruling, but did not make an offer of proof to show what statements he would have offered.

¶54 Admission of Arbolida's statements through the detective's testimony did not violate Martinez's right to confrontation. We held in *McGill* that "the Confrontation Clause

---

[4] *Enmund v. Florida*, 458 U.S. 782 (1982); *Tison v. Arizona*, 481 U.S. 137 (1987).

24

does not apply to rebuttal testimony at a sentencing hearing." 213 Ariz. at 159 ¶ 52, 140 P.3d at 942. We decline to revisit that holding. *See State v. Chappell*, 225 Ariz. 229, 240 ¶¶ 40-41, 236 P.3d 1176, 1187 (2010); *State v. Martinez*, 218 Ariz. 421, 431 ¶ 44, 189 P.3d 348, 358 (2008). Moreover, Martinez had a full opportunity to confront Arbolida when he initially testified. The trial court properly admitted this testimony.

¶55        On appeal, Martinez relies only on the Confrontation Clause to challenge the admission of Arbolida's statements and does not now argue that he should have been permitted to impeach those statements. *See State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) ("Failure to argue a claim on appeal constitutes waiver of that claim.") Nonetheless we review the preclusion of impeachment for fundamental error because if a defendant is deprived of the chance to present relevant mitigation, "[t]he resulting death sentence cannot stand." *Skipper v. South Carolina*, 476 U.S. 1, 8 (1986); *see also Tennard v. Dretke*, 542 U.S. 274, 284-85 (2004) (noting that, pursuant to the Eighth Amendment, the jury must be able to consider and give effect to all relevant mitigation evidence proffered by a defendant).

¶56        Although the trial court did not err in admitting the detective's hearsay testimony about Arbolida's statements, it should have allowed Martinez to present any inconsistent

25

statements for impeachment. When one party properly introduces hearsay testimony, cross-examination that calls into question the veracity of that testimony is relevant to the issue of leniency. *See* A.R.S. § 13-752(G) ("At the penalty phase, the defendant and the state may present any evidence that is relevant to the determination of whether there is mitigation that is sufficiently substantial to call for leniency."); *see also Tennard*, 542 U.S. at 284-85 (similarly defining relevant mitigating evidence); *State v. Prince*, 226 Ariz. 516, 526-27 ¶¶ 13-20, 250 P.3d 1145, 1155-56 (2011) (discussing relevant evidence in penalty phase).

¶57    Because Martinez did not make an offer of proof, however, we are unable to find prejudice. *See* Ariz. R. Evid. 103(a)(2); *State v. Kaiser*, 109 Ariz. 244, 246, 508 P.2d 74, 76 (1973) ("As a general rule evidence cannot be reviewed on appeal in the absence of an offer of proof showing that the excluded evidence would be admissible and relevant."). We therefore cannot find fundamental error. *See Henderson*, 210 Ariz. at 607 ¶ 20, 115 P.3d at 567 (holding that fundamental error consists of both fundamental error and a finding of prejudice).

¶58    In any event, we have reviewed Arbolida's testimony in the guilt phase and determined that his inconsistent statements either concerned the sequence of events for the burglary, his involvement, or whether a third person may have been involved.

26

These statements concerned matters that were already decided in the guilt and aggravation phases, and the second penalty phase jury was instructed to accept the previous findings that Martinez was guilty of felony murder, that he actually killed Vern, and that he was a major participant in the crime. None of Arbolida's allegedly inconsistent statements would have constituted mitigating circumstances, nor were they relevant to the jury determining whether to "impose a sentence less than death." § 13-751(G); *see State v. Nordstrom*, ___ Ariz. ___, ___ ¶ 15, ___ P.3d ___ (2012) ("A defendant has no constitutional right to present residual doubt evidence at sentencing.") (internal quotation omitted). No prejudice is apparent from the record.

**G. Alleged issues with a second penalty phase**

¶59     Martinez raises two arguments with respect to holding a second penalty phase before a different jury. He did not object on either ground in the trial court, so we review for fundamental error. *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

¶60     Because the first jury was unable to reach a verdict in the penalty phase, the trial court discharged it and impaneled a new jury to sentence Martinez pursuant to A.R.S. § 13-752(K). Martinez argues that because the court instructed the jury to accept the aggravating circumstances as proven, it

27

encouraged the jury to abdicate its responsibility in imposing a death sentence to the other jury in violation of *Caldwell v. Mississippi*, 472 U.S. 320 (1985).

**¶61** In *Caldwell*, the Supreme Court concluded "that it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. at 328-29. "We have previously concluded that *Caldwell*'s dictate is not violated when different juries determine guilt and sentence if the sentencing jury is not misled as to its role." *State v. Moore*, 222 Ariz. 1, 18 ¶ 93, 213 P.3d 150, 167 (2009). As long as "the resentencing jury received clear instruction that it alone would determine the appropriate sentence," there is no *Caldwell* violation. *State v. Dann*, 220 Ariz. 351, 361 ¶ 30, 207 P.3d 604, 614 (2009).

**¶62** Here, the trial court twice instructed the jury in the second penalty phase that it alone would determine whether to impose a death sentence and that its decision would be binding. Although the court told the jurors to accept the two aggravators as proven, it also instructed them to separately assess the severity of the aggravators in making their sentencing determination. No *Caldwell* violation occurred. *See People v. Murtishaw*, 773 P.2d 172, 183 & n.8 (Cal. 1989) (rejecting the

28

same argument and stating that "the prior jury was not defendant's 'sentencer;' . . . it merely resolved a factual issue which rendered defendant *eligible* for the death penalty. The normative function of deciding *which penalty should actually be imposed* was entirely in the second jury's hands.").

¶63     Martinez also argues that § 13-752(K), as applied to him, is unconstitutionally vague because it "does not establish procedures governing the admission, to a new jury during the second penalty phase, of evidence of the aggravating factors previously found by the aggravation-phase jury."  In *Prince*, we rejected this argument, finding that "the statutes governing the second penalty phase provide sufficient guidance" and are not vague.  226 Ariz. at 527 ¶ 20, 250 P.3d at 1156.  Moreover, as the State asserts, Martinez has not shown any prejudice because all of the information presented to the aggravation phase jury was also provided to the second penalty phase jury.

**H. Motion to disqualify the Maricopa County Attorney's Office**

¶64     Martinez argues that the superior court abused its discretion when it denied his motion to disqualify the Maricopa County Attorney's Office.  We review a trial court's ruling on a motion to disqualify the prosecutor for an abuse of discretion. *State v. Williams*, 136 Ariz. 52, 57, 664 P.2d 202, 207 (1983).

¶65     Before the second penalty phase, Martinez moved to disqualify the Maricopa County Attorney's Office based on its

29

filing of a RICO complaint against two Maricopa County Superior Court judges, as well as its filing felony criminal charges against one of those judges. But Martinez subsequently withdrew his motion after it was assigned, along with similar motions in other cases, to a judge from Cochise County.

¶66    A few days later, Martinez and thirty other defendants filed a joint motion to disqualify the Maricopa County Attorney's Office, alleging that "[t]he appearance of judicial impropriety caused by [former Maricopa County Attorney] Andrew Thomas and [Maricopa County Sheriff] Joe Arpaio is supported by overwhelming evidence that requires Thomas' disqualification under Arizona law." While this motion was pending, Thomas resigned from office. Subsequently, the Cochise County judge dismissed the motion as moot.

¶67    There was no abuse of discretion. The thrust of Martinez's motion concerned Thomas and did not allege any improper conduct by other members of his office. Once Thomas resigned, the issue was moot. Martinez generally alleged that judges in his case were intimidated into ruling unfairly when Thomas was in office. But the only specific allegation of bias was another judge's denial of two of Martinez's motions. In ruling on both motions, that judge made detailed findings and noted his dissatisfaction with the handling of capital cases in Maricopa County. Although these rulings went against Martinez,

30

they clearly were not the product of fear of repercussions from the County Attorney. Martinez generally alleges that Thomas likely intimidated the other judges involved in his case. But he provides no support for this allegation, and any intimidation necessarily ended with Thomas's resignation.

### III. REVIEW OF DEATH SENTENCE

¶68 Martinez asks this Court to reduce his sentence to life imprisonment. Because Martinez committed the murder after August 1, 2002, we review "whether the trier of fact abused its discretion in finding aggravating circumstances and imposing a sentence of death." A.R.S. § 13-756(A).

### A. Aggravating circumstances

¶69 Martinez does not challenge the jury's finding of the (F)(2) and (F)(5) aggravating circumstances. Nonetheless, we review whether the jury abused its discretion in finding them. *Morris*, 215 Ariz. at 340-41 ¶ 77, 160 P.3d at 219-20. "Under this standard of review, we uphold a decision if there is any reasonable evidence in the record to sustain it." *Id.* (internal quotation omitted).

¶70 The jury did not abuse its discretion in finding each aggravating circumstance. The State proved the (F)(2) aggravator by showing Martinez had nineteen serious offense convictions. *See supra* § II(C), ¶¶ 16-23.

¶71 The record also contains sufficient evidence

31

supporting the jury's finding that Martinez committed the murder for pecuniary gain. *See* § 13-751(F)(5). Martinez and Arbolida "scoped out" Betty and Laurel's home, left to retrieve a gun, and then returned wearing gloves and masks to commit the burglary and theft. They took various items from the home, Martinez shot Vern, and then he and Arbolida fled with the stolen property. Martinez went to the victims' home expecting pecuniary gain, and the murder allowed him "to keep the stolen property and avoid capture." *See Martinez*, 218 Ariz. at 435 ¶ 68, 189 P.3d at 362; *see also State v. Ellison*, 213 Ariz. 116, 143 ¶ 125, 140 P.3d 899, 926 (2006) (finding pecuniary gain aggravating circumstance proven when defendant went to victims' home to commit burglary and committed the murders to "escape and avoid identification").

## B. Propriety of death sentence

¶72 Martinez argues the jury abused its discretion by finding a death sentence appropriate because he introduced substantial mitigation warranting leniency. This Court "will not reverse the jury's decision [to impose the death penalty] so long as any reasonable jury could have concluded that the mitigation established by the defendant was not sufficiently substantial to call for leniency." *Morris*, 215 Ariz. at 341 ¶ 81, 160 P.3d at 220.

¶73 The jury did not abuse its discretion. Although

32

Martinez presented evidence of his low IQ and brain damage, the State effectively rebutted it with evidence that he malingered, lowering his performance on the tests. *See State v. Cruz*, 218 Ariz. 149, 170-71 ¶ 138, 181 P.3d 196, 217-18 (2008). Also, because Martinez was forty-one years old when he committed the murder, the jury was entitled to give less weight to mitigating evidence stemming from his childhood. *See Prince*, 226 Ariz. at 541 ¶ 109, 250 P.3d at 1170 ("Difficult childhood circumstances also receive less weight as more time passes between the defendant's childhood and the offense."). Based on the facts of the crime, the two strong aggravating factors, and the *Enmund/Tison* finding that Martinez actually killed the victim, a reasonable jury could find Martinez's mitigation did not warrant leniency. *See State v. Cota*, 229 Ariz. 136, ___ ¶ 95, 272 P.3d 1027, 1044 (2012) ("Even if we assume that Cota proved each of his alleged mitigating factors, the jury still did not abuse its discretion here by finding the mitigation insufficient to warrant leniency."); *State v. Villalobos*, 225 Ariz. 74, 85 ¶ 51, 235 P.3d 227, 238 (same).

## CONCLUSION

¶**74**     For the foregoing reasons, we affirm Martinez's convictions and sentences.[5]

---

[5]     Martinez raises twelve issues to avoid preclusion on federal review. His statements of those issues and the cases he

33

_____
               Robert M. Brutinel, Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Scott Bales, Vice Chief Justice


_____
A. John Pelander, Justice


**APPENDIX**


1.   The fact-finder in capital cases must be able to consider all relevant mitigating evidence in deciding whether to give the death penalty. *See Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S. Ct. 2978, 49 L.Ed.2d 944 (1976). The trial court's failure to allow the jury to consider and give effect to all mitigating evidence in this case by limiting its consideration to that proven by a preponderance of the evidence is unconstitutional under the Eighth and Fourteenth Amendments. This Court rejected this argument in *McGill*, 213 Ariz. at 161 ¶ 59, 140 P.3d at 944.

2.   By allowing victim impact evidence at the penalty phase of the trial, the trial court violated defendant's constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments and Article 2, Sections 1, 4, 13, 15, 23, and 24 of the Arizona Constitution. This Court rejected challenges to the use of victim impact evidence in *Lynn v. Reinstein*, 205 Ariz. 186, 191 ¶ 16, 68 P.3d 412, 417 (2003).

3.   The trial court improperly omitted from the penalty phase

_____

cites rejecting his contentions are presented verbatim in the Appendix.

34

jury instructions words to the effect that they may consider mercy or sympathy in deciding the value to assign the mitigation evidence, instead telling them to assign whatever value the jury deemed appropriate. The court also instructed the jury that they "must not be influenced by mere sympathy or by prejudice in determining these facts." These instructions limited the mitigation the jury could consider in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments and Article 2, Sections 1, 4, 15, 23, and 24 of the Arizona Constitution. This Court rejected this argument in *State v. Carreon*, 210 Ariz. 54, 70-71 ¶¶ 81-87, 107 P.3d 900, 916-17 (2005).

4. The death penalty is cruel and unusual under any circumstances and violates the Eighth and Fourteenth Amendments, and Article 2, Section 15 of the Arizona Constitution. This Court rejected this argument in *State v. Harrod*, 200 Ariz. 309, 320 ¶ 59, 26 P.3d 492, 503 (2001), *vacated on other grounds*, 536 U.S. 953, 122 S. Ct. 2653, 153 L.Ed.2d 830 (2002).

5. The death penalty is irrational and arbitrarily imposed; it serves no purpose that is not adequately addressed by life in prison, in violation of the defendant's right to due process under the Fourteenth Amendment to the United States Constitution and Article 2, Sections 1 and 4 of the Arizona Constitution. This Court rejected these arguments in *State v. Beaty*, 158 Ariz. 232, 247, 762 P.2d 519, 534 (1988).

6. The prosecutor's discretion to seek the death penalty lacks standards and therefore violates the Eighth and Fourteenth Amendments, and Article 2, Sections 1, 4, and 15 of the Arizona Constitution. This Court rejected this argument in *State v. Sansing*, 200 Ariz. 347, 361 ¶ 46, 26 P.3d 1118, 1132 (2001), *vacated on other grounds*, 536 U.S. 954, 122 S. Ct. 2654, 153 L.Ed.2d 830 (2002).

7. Arizona's death penalty is applied so as to discriminate against poor, young, and male defendants in violation of Article 2, Sections 1, 4, and 13 of the Arizona Constitution. This Court rejected this argument in *Sansing*, 200 Ariz. at 361 ¶ 46, 26 P.3d at 1132.

8. Proportionality review serves to identify which cases are above the "norm" of first-degree murder, thus narrowing the class of defendants who are eligible for the death penalty. The absence of proportionality review of death sentences by

Arizona courts denies capital defendants due process of law and equal protection and amounts to cruel and unusual punishment in violation of the Fifth, Eighth, and Fourteenth Amendments, and Article 2, Section 15 of the Arizona Constitution. This Court rejected this argument in *Harrod*, 200 Ariz. 320 ¶ 65, 26 P.3d at 503.

9. Arizona's death penalty unconstitutionally requires imposition of the death penalty whenever at least one aggravating circumstance and no mitigating circumstances exist, in violation of the Eighth and Fourteenth Amendments, and Article 2, Section 15 of the Arizona Constitution. Arizona's death penalty law cannot constitutionally presume that death is the appropriate default sentence. This Court rejected this argument in *State v. Miles*, 186 Ariz. 10, 19, 918 P.2d 1028, 1037 (1996).

10. Execution by lethal injection is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, and Article 2 sec. 15 of the Arizona Constitution. This argument was rejected in *State v. Van Adams*, 194 Ariz. 408, 422, 984 P.2d 16, 30 (1999).

11. Arizona's statutory scheme for considering mitigation evidence is unconstitutional because it limits full consideration of that evidence. *State v. Mata*, 125 Ariz. 233, 242, 609 P.3d 48, 57 (1980).

12. "If you unanimously find that no mitigation exists or that mitigation is not sufficiently substantial to call for leniency, you *may* impose the death penalty." *See e.g. State v. Tucker*, 215 Ariz. 298 (2007) (instructing juror that he or she must vote to impose a death sentence if he or she does not find any mitigation sufficiently substantial to call for leniency does not create impermissible "presumption of death"); *State v. Harrod*, 218 Ariz. 268 (2008); *State v. Cruz*, 218 Ariz. 149 (2008).