NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

WILLIAM EUGENE MCKEEVER, *Appellant.*

No. 1 CA-CR 14-0856
FILED 12-17-2015

Appeal from the Superior Court in Maricopa County
No. CR2013-429444-002
The Honorable Dean M. Fink, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adele Ponce
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge John C. Gemmill joined.

---

**C A T T A N I**, Judge:

¶1        William Eugene McKeever appeals his conviction of second-degree burglary and the resulting sentence. For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        D.C., the victim in this case, lived in Buckeye down the street from a home he was renovating. One morning D.C. heard "clunking and thumping" noises coming from the direction of that home, and he drove over to investigate. He noticed that a chain that normally blocked the driveway was on the ground, and he saw two men near the garage, loading items into an SUV.

¶3        D.C. got out of his truck, unholstered his revolver, and with the gun at his side, approached the men. The two men jumped into the SUV, but the driver saw D.C.'s handgun, got out, and raised his hands. The passenger, McKeever, yelled at the driver to "get in and go," but the driver stayed put. McKeever yelled at D.C., "[Y]ou're not going to shoot me for scavenging," walked around the SUV and then got in the driver's seat. When McKeever drove toward the street, D.C. shot twice at the vehicle, hitting the back tire. McKeever drove off, and D.C. called the police.

¶4        After police officers arrived, D.C. inspected the property with them. D.C. noted that the garage lock had been smashed, and that his table saw was missing. The door to the house—previously barricaded shut with cement blocks—had been snapped in half, the door frame broken, and the cement blocks pushed aside.

¶5        Inside the house, there were footprints and drag marks across the floor. D.C. reported other missing items, including a refrigerator, two motorcycle frames, two motorcycle wheels, a custom-made lawn chair, a fluorescent light rack, and several motorcycle gas tanks.

¶6	A few hours later, an officer on patrol several miles from D.C.'s house saw a vehicle matching the description of the SUV McKeever was driving. The officer began to follow the vehicle, but before he turned on his lights the vehicle came to a stop. McKeever got out of the SUV and was arrested.

¶7	Police officers found a flat, shredded tire with a bullet hole in it in the SUV. The officers also found D.C.'s missing lawn chair, table saw, and two of his gas tanks. D.C.'s two motorcycle frames, wheels, and his refrigerator were later recovered from the home where McKeever's companion lived. Additionally, officers subsequently determined that McKeever's shoes had similar tread to the footprints found in the burglarized home.

¶8	After a jury found McKeever guilty of second-degree burglary, he was sentenced to an aggravated sentence of nine years. McKeever timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4033(A).[1]

## DISCUSSION

¶9	McKeever argues that he was denied a fair trial due to prosecutorial misconduct. He asserts in particular that the prosecutor improperly commented on his post-*Miranda* silence and attempted to provoke a mistrial. When a defendant objects to alleged misconduct, as McKeever did, we review each instance of alleged misconduct for harmless error, *State v. Martinez*, 230 Ariz. 208, 214, ¶ 25 (2012), and consider the cumulative effect of the alleged misconduct. *State v. Morris*, 215 Ariz. 324, 335, ¶ 47 (2007). We will reverse based on prosecutorial misconduct if: "(1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying [the] defendant a fair trial." *State v. Anderson*, 210 Ariz. 327, 340, ¶ 45 (2005) (citation omitted). To establish the second prong, a defendant must demonstrate that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

---

[1]	Absent material revisions after the relevant date, we cite a statute's current version.

## I.    The prosecutor's questioning on redirect.

¶10        McKeever argues that the prosecutor improperly tried to provoke a mistrial by repeatedly referring to McKeever's post-arrest interview, which had not been admitted in evidence.  We disagree.

¶11        Before beginning her redirect examination of the investigating detective, the prosecutor indicated her intent to introduce evidence of the post-arrest interview to rebut defense counsel's line of questioning during cross-examination.  Defense counsel objected, and the court ruled that "at this time" the interview would not be allowed into evidence because "direct would have been the best time for it."

¶12        On cross-examination, defense counsel had asked the detective whether she obtained any fingerprint or DNA evidence.  During redirect examination, the prosecutor asked the detective why she had failed to look for fingerprints at D.C.'s home.  The detective began to respond that fingerprints were unnecessary because McKeever had admitted (in his interview) to being on the property, and McKeever's counsel objected and moved for a mistrial.  Counsel argued that the prosecutor was intentionally violating the court's evidentiary ruling and attempting to introduce the interview.  The court denied the motion, stating that the prosecutor's questioning was appropriate in light of defense counsel's questions on cross-examination, and the court reiterated that the prosecutor would not be allowed to place the interview in evidence.

¶13        McKeever argues that the prosecutor's questioning was designed to force a mistrial so there would be a second chance to introduce the interview on direct examination.  But the prosecutor's question was appropriate because defense counsel, by asking whether the detective secured fingerprint or DNA evidence, opened the door to questioning as to why such evidence was not secured.

¶14        In *State v. Kemp*, 185 Ariz. 52, 60–61 (1996), the Arizona Supreme Court rejected an argument similar to that raised here.  Defense counsel in that case questioned a detective to elicit responses that "no evidence" connected the defendant to the crime, even though defense counsel knew the detective had interviewed a co-defendant, who had implicated the defendant.  *Id.* at 60.  Although the co-defendant's interview had been precluded as inadmissible hearsay, the Supreme Court ruled that the superior court properly allowed the prosecutor a "limited line of inquiry" to rebut the inference that no evidence connected the defendant to the crime.  *Id.*

¶15 Here, defense counsel's questioning regarding fingerprint and DNA evidence implied a lack of evidence tying McKeever to the crime. When defense counsel cross-examined the detective, counsel knew why the detective had not obtained fingerprint or DNA evidence. Thus, the superior court properly allowed redirect examination regarding why the detective did not secure forensic evidence.

## II. The prosecutor's questioning following a jury question.

¶16 After the prosecutor finished her redirect examination of the detective, the jury asked whether McKeever had admitted taking the property. Although defense counsel objected to the question, the court allowed it, noting that the only basis for not admitting the post-arrest interview into evidence was the State's failure to introduce it during direct examination. The court also noted that any follow-up questioning of the detective regarding the jury question could open the door to additional information detailed in the interview.

¶17 After defense counsel questioned the detective regarding the jury question, the prosecutor asked the detective additional questions, including where the property in the SUV came from, whether McKeever admitted to being on the property, and whether the detective could recall if McKeever indicated what property was in the SUV. When the detective had difficulty remembering, the prosecutor asked if anything would refresh her recollection, to which the detective replied that seeing the interview would do so. McKeever's counsel again objected and moved for a mistrial, which the court denied. The prosecutor did not ask any further questions or use the interview to refresh the detective's memory, and instead rested her case.

¶18 The prosecutor's questioning was not misconduct. The superior court allowed the line of inquiry over objections from McKeever's counsel because the questions were related to the jury's question. Moreover, once the detective had difficulty remembering information relating to McKeever's arrest, the detective could have been shown the interview to refresh her memory, *see* Ariz. R. Evid. 612, even though the transcript had not been admitted into evidence. *See State v. Hall*, 18 Ariz. App. 593, 596 (App. 1972) (noting that "all that is necessary" is that the object serves to revive the witness's recollection). Accordingly, the prosecutor's questioning in response to the jury's question was not misconduct.

### III.    The alleged comments on post-*Miranda* silence.

**¶19**    McKeever argues that the prosecutor improperly impeached him with his post-*Miranda* silence.  An accused has the constitutional right to remain silent, *see* U.S. Const. amend V, and this right is violated if the prosecutor attempts to impeach the defendant with his post-*Miranda* silence.  *State v. Mauro*, 159 Ariz. 186, 197 (1988) (citing *Doyle v. Ohio*, 426 U.S. 610 (1976)).  But this constitutional right is not implicated when a defendant waives his rights by answering questions after warnings have been given.  *State v. Henry*, 176 Ariz. 569, 580 (1993).

**¶20**    After being advised of his *Miranda* rights, McKeever told the detective that an acquaintance had picked him up from his house and taken him to D.C.'s property to look for scrap metal.  McKeever further stated he was "an idiot for being there."  Although he denied ever being in the house, McKeever acknowledged taking items strewn about the property.

**¶21**    When McKeever testified at trial, he gave a different version of events.  He stated that he and his acquaintance met up at a third party's house and had been hanging out with two women named Jojo and Fran.  He claimed that he and his acquaintance planned on meeting the women at the property, that he was told en route that Jojo owned the property, and that while they were waiting for the women they looked around for scrap metal.

**¶22**    On cross-examination, the prosecutor asked McKeever why he had not mentioned the plan to meet with the women at the property or Jojo's ownership of the property during his interview with the detective.  After McKeever testified, the prosecutor recalled the detective as a rebuttal witness, discussed McKeever's interview, and moved to have the taped interview admitted as impeachment evidence against him.  The judge granted the motion and admitted the interview, which was played for the jury.  During closing argument the prosecutor asserted that McKeever had changed his story, noting the differing reasons McKeever gave for being on the property at trial versus during his post-arrest interview.

**¶23**    McKeever contends that the prosecutor's questioning during cross-examination and her statements during closing argument were improper because McKeever was entitled to "not tell part of his story" during the interview and rely on the implicit promise that he was protected under his right to remain silent.

**¶24**    McKeever never invoked his right to silence and instead chose to answer all of the detective's questions, in the process providing the

detective with a different story than he ultimately would describe at trial. The State is not precluded from emphasizing inconsistencies between a defendant's trial testimony and his post-*Miranda* statements to the police. *See Anderson v. Charles*, 447 U.S. 404, 408 (1980) (holding that when a prosecutor inquires into prior inconsistent statements, there is "no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent"). Thus, the prosecutor's questions and closing argument did not comment on any post-*Miranda* silence, but rather revealed the inconsistencies between McKeever's two stories.

## CONCLUSION

¶25 For the foregoing reasons, we affirm McKeever's conviction and sentence.



Ruth A. Willingham · Clerk of the Court
FILED: ama